141 Cal.App.3d 778 (1983)
190 Cal. Rptr. 560
TWENTIETH CENTURY-FOX FILM CORPORATION, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and KEVIN CONWAY, Respondents.
Docket No. 65903.
Court of Appeals of California, Second District, Division Five.
April 11, 1983.
*780 COUNSEL
Rowen, Swanson, Rose & Simon and Joel D. Swanson for Petitioner.
Geffner & Satzman and Stephen Schwartz for Respondents.
OPINION
HASTINGS, J.
Petitioner Twentieth Century-Fox Film Corporation, permissibly self-insured, seeks review of the findings and annulment of an award by respondent Workers' Compensation Appeals Board (WCAB or Board) finding that respondent Kevin Conway sustained an injury to his psyche arising out of and occurring in the course of his employment with petitioner from September 1977 through December 11, 1977, with subsequent temporary disability. Petitioner argues that there is not substantial evidence to support the findings of industrial injury and temporary disability. As we shall explain, petitioner is entitled to relief. In annulling the Board's decisions for lack of sufficient findings on the issue of injury, we do not reach the issue of temporary disability.

FACTS
Applicant/respondent Kevin Conway alleged an injury to his psyche due to stress and strain in the course of his employment from September 1977 to December 11, 1977, as a studio transportation driver and accountant for petitioner Twentieth Century-Fox. Petitioner denied industrial injury, claiming applicant's nervous breakdown was the result of applicant's screenplay having *781 been rejected by Twentieth Century-Fox, which was unrelated to his employment duties for petitioner.
The applicant testified that the stress at Fox was due to his having to work for "a very dangerous alcoholic" who was often inebriated at work and drove erratically. The applicant had to do the other man's work as well as his own. The applicant became aware of irregularities in purchase orders, billings and receipts in the transportation department, finding that he was expected to sign purchase orders for materials eventually put to private use. The demands of his work increased as his supervisor's condition deteriorated in December 1977. The applicant was then involved in a minor traffic accident, and on the same day his screenplay was rejected by the story department.
Dr. Alfred Bloch, a psychiatrist reporting on behalf of the applicant, diagnosed the applicant's psychiatric condition as:
"1. Anxiety neurosis in a passive aggressive personality with obsessional features.
"2. Rule out schizophrenia, paranoid type."
Dr. Bloch explained the onset of applicant's disability as follows: "Mr. Conway provides an extremely complex history of events in the course of his employment at 20th Century Fox Studios. His recollection of these events is confused at best, but he appears to have faced stresses in his dealings with his immediate supervisor, in maintaining various invoices and receipts and in the submission of a screenplay for production considerations. This last situation did not develop as the result of his duties as a Driver, but it is inextricably involved in the other stresses from a psychological viewpoint. Apparently, Mr. Conway's primary motivation in obtaining work as a Studio Driver was to further his career as a Screenwriter. Thus, his sense of success or failure at work and his psychological adjustment to employment was largely predicated on his ability to further his hoped-for career.
"Unfortunately, my commentary on this case is limited by inadequate information, the presence could confirm the patient's allegations regarding his work situation. The situations he described of alcoholism and embezzlement that he attributes to coworkers, are certainly not unheard of in industry, but it is possible that, to some degree, his recollections of the situation have been infused with a fertile (and distorted) imaginative process. Although it is difficult to separate the facts from fiction, information presented in the patient's deposition tends to substantiate the validity of some of the events he has described.
*782 "Apparently, Mr. Conway worked fairly consistently for Ralphs Supermarkets prior to employment in the film industry. He also seems to have worked satisfactorily as a Studio Driver for about one year before his assignment to 20th Century Fox Studios. There is, therefore, no evidence of disability prior to December 1977, although the psychological events which occurred at that time are likely to have some basis in the patient's previous adjustment. Based on his report, I believe Mr. Conway underwent a psychotic decompensation, marked by delusional thinking and withdrawal, and this led to a breakdown in his ability to function at work and more than a year of disability.
".... .... .... .... .... ...
"Mr. Conway became over-involved in his work at the studio, unconsciously placing much of the hope for personal success in the acceptance of his screenplay. Anxiety over this situation became generalized to his employment duties in the transportation section. He became obsessively concerned with the demands of `covering up' both the behavior of his immediate supervisor and what he believed was evidence of ongoing embezzlement. He gradually became overwhelmed. With the initial rejection of the screenplay, his efforts at binding anxiety collapsed, as did his ability to maintain impulse control.
"It seems that, a few days later, he misinterpreted what might have been a minor crisis in his department and aggressive impulses, arising in defense of the ego in face of a perceived personal rejection, became unleashed. His reality perception was blurred and confused. Probably, the degree of agitation contributed to the automobile accident December 11, 1977; certainly, it precipitated his leaving work."
Based on Dr. Bloch's report and applicant's testimony, the workers' compensation judge (WCJ) found that applicant's psychiatric disease arose out of and occurred in the course of his employment.

CONTENTION

Whether the Finding of Industrial Injury Is Supported by Substantial Evidence.

DISCUSSION
(1) The determination of an industrial injury is governed by Labor Code section 3600, which requires that an injury arise out of employment, occur in *783 the course of employment, and be proximately caused by the employment.[1] The conditions for a compensable injury are met where "`the employment [is] one of the contributing causes without which the injury would not have occurred.'" (Albertson's Inc. v. Workers' Comp. Appeals Bd. (Bradley) (1982) 131 Cal. App.3d 308, 316 [182 Cal. Rptr. 304], quoting from Madin v. Industrial Acc. Com. (1956) 46 Cal.2d 90 [292 P.2d 892].) To be a "contributing cause" of the injury, the employment itself must be a "`positive factor influencing the course of disease' [citation]" (Bingham v. Workmen's Comp. App. Bd. (1968) 261 Cal. App.2d 842, 848 [68 Cal. Rptr. 410]), or must play an "active role" in the development of the condition. (Albertson's, supra, at p. 317.)
In evaluating injuries caused by stress, a subjective test is appropriate based on the concept that "[i]ndustry takes the employee as it finds him" (Liberty Mut. Ins. Co. v. Ind. Acc. Com. (1946) 73 Cal. App.2d 555, 559 [166 P.2d 908]). "The proper focus of inquiry, then, is not on how much stress should be felt by an employee based on a `normal' reaction to it, but how much stress is felt by an individual worker reacting uniquely to the work environment." (Albertson's Inc. v. Workers' Comp. Appeals Bd., supra, 131 Cal. App.3d at p. 314.) However, it is not sufficient for purposes of finding industrial causation if the nature of the employee's duties "merely provided a stage" for the injury (Transactron Inc. v. Workers' Comp. Appeals Bd. (1977) 68 Cal. App.3d 233, 238 [137 Cal. Rptr. 142]), if the employment were an "after-the-fact rationalization" (Albertson's, supra, 131 Cal. App.3d at p. 315), or if the evidence established that the "`employment was a mere passive element that a nonindustrial condition happened to have focused on.'" (Albertson's, supra, at p. 315.) A finding of industrial injury is proper only where the employment plays an "active" or "positive" role in the development of the psychological condition. (Albertson's, supra, at p. 317; Bingham v. Workmen's Comp. App. Bd., supra, at 261 Cal. App.2d 848.)
(2) Initially, we find that a determination as to whether substantial evidence supports the finding of industrial injury is seriously impeded because the WCJ and Board have failed to make the appropriate findings pursuant to Labor Code *784 sections 5313 and 5908.5,[2] which require that the WCJ and Board specify in detail the reasoning for their decision.
The statutory requirements that the WCJ and Board state the evidence relied on and the reasons for their decisions were established to avoid careless and arbitrary action and to assist the reviewing court in meaningful judicial review by providing the court with the principles relied on by the Board. (Goytia v. Workmen's Comp. App. Bd. (1970) 1 Cal.3d 889, 893 [83 Cal. Rptr. 591, 464 P.2d 47]; Patterson v. Workers' Comp. Appeals Bd. (1975) 53 Cal. App.3d 916, 924 [126 Cal. Rptr. 182].)
In the instant case, the WCJ has not specifically discussed his conclusion as to the relationship between the employment and the psychiatric condition. The WCJ has merely quoted from Dr. Bloch's opinions and applicant's testimony as to the basis for the finding, instead of providing the reasoning for the decision. In denying reconsideration the Board merely incorporated by reference the report of the WCJ on the petition for reconsideration. Neither the WCJ nor the Board specifically determined if the employment in fact played an "active" or "positive" role in the development of the psychological condition, or whether the employment was a "mere passive element" that the applicant happened to have focused on. On this ground alone we must necessarily remand this matter for the proper findings.[3]
(3a) Further, even if we were to construe the Board's findings as intending to determine that the applicant's employment played an "active" or "positive" role in the development of the applicant's psychological injury, we could not hold that the medical evidence relied on herein provides substantial evidence to support a finding of industrial injury. (4) A finding of industrial injury must be supported by substantial evidence, which includes both competent lay and medical evidence. (Insurance Co. of North America v. Workers' Comp. Appeals Bd. (Kemp) (1981) 122 Cal. App.3d 905 [176 Cal. Rptr. 365].) "[N]ot all expert medical opinion constitutes substantial evidence upon which the Board *785 may rest its decision. Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, or on incorrect legal theories. Medical opinion also fails to support the Board's findings if it is based on surmise, speculation, conjecture or guess." (Hegglin v. Workmen's Comp. App. Bd. (1971) 4 Cal.3d 162, 169 [93 Cal. Rptr. 15, 480 P.2d 967].)
(3b) Dr. Bloch admits that his "commentary on this case is limited by inadequate information," which suggests that Dr. Bloch's conclusions are speculative, and therefore, do not provide substantial evidence. The opinion of Dr. Bloch does not adequately distinguish whether the applicant's employment, the nonindustrial incident involving the rejection of his screenplay, or a combination of the two was the cause of the applicant's psychiatric disease. Dr. Bloch's explanation of the cause of applicant's breakdown implies that applicant's anxiety was due to his hope that Fox would accept his screenplay, a totally nonindustrial matter. Then, Dr. Bloch opines, "With the initial rejection of the screenplay, his efforts at binding anxiety collapsed, as did his efforts to maintain impulse control." Dr. Bloch concludes that the applicant then "misinterpreted what might have been a minor crisis in his department" and applicant's "reality perception was blurred," resulting in applicant's leaving work.
Based only on the evidence contained in Dr. Bloch's report, we do not believe that the Board on remand could make the necessary findings on the issue of whether the applicant's employment was a positive factor, or played an active role in the development of the psychological disease.
For the foregoing reasons, the order of the Board denying reconsideration and the findings and award herein are annulled. The matter is remanded for further proceedings consistent with this opinion.
Feinerman, P.J., and Stephens, J., concurred.
NOTES
[1] Labor Code section 3600 provides in relevant part: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.
"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.
"(c) Where the injury is proximately caused by the employment, either with or without negligence."
[2] Labor Code section 5313 provides: "The appeals board or a referee shall, within 30 days after the case is submitted, make and file findings upon all facts involved in the controversy and an award, order, or decision stating the determination as to the rights of the parties. Together with the findings, decision, order or award there shall be served upon all the parties to the proceedings a summary of the evidence received and relied upon and the reasons or grounds upon which the determination was made."

Labor Code section 5908.5 provides that an order granting or denying reconsideration "shall state the evidence relied upon and specify in detail the reasons for the decision."
[3] For a good discussion of the deficiencies in the current method of adjudicating workers' compensation psychiatric claims, including the failure of judges to make adequate findings of fact, see Lasky, Psychiatry and California Workers' Compensation Laws: A Threat and a Challenge (1980) 17 Cal. Western L.Rev. 1.