[Civ. No. 63936. Second Dist., Div. One. June 21, 1983.]

GEORGIA-PACIFIC CORPORATION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ROBERT H. BYRNE, Respondents.

**COUNSEL**

Zachary H. Sacks for Petitioner.

Lessing G. Solov and Walter Wenko for Respondents.

**OPINION**

**HANSON (Thaxton), J.**—Petitioner Georgia-Pacific Corporation seeks review of a workers' compensation award to its former employee, respondent Robert H. Byrne; we annul the award and remand to respondent Workers' Compensation Appeals Board.

THE CASE

Respondent Byrne's last day of employment was on November 29, 1979. He filed an application for workers' compensation benefits on January 16, 1980, alleging that while employed as a quality control and safety supervisor by Georgia-Pacific, he sustained an injury to his nervous system and psyche.

At trial before the workers' compensation Judge, Byrne testified that he began employment at Georgia-Pacific in 1968 as a machine operator. By 1977, he had been promoted to quality control, after serving in various capacities for the company. Byrne testified that he first experienced emotional difficulties in October 1977, difficulties which resulted in a brief period of hospitalization; these complaints were nonindustrial in nature.

When Byrne returned to work in January 1978, he testified that he felt increasing stress and strain on the job. He alluded to an airplane trip to

Richmond as one incident which was stressful; Georgia-Pacific recalled him to Los Angeles, where he was overseeing three working shifts, requiring from eight to thirteen hours per day. The stress continued until November 29, 1979, when Byrne was informed by his supervisor that his job was being eliminated and that he either could accept a lower-paying job as a line inspector or be laid off. Byrne went home ill and did not return to his employment.

On July 10, 1981, the workers' compensation judge issued findings and an award, concluding that this employee had sustained an injury to his nervous system arising out of and occurring in the course of his employment; he was awarded temporary disability from November 30, 1979, through July 29, 1980; permanent disability was awarded, after apportionment, of 16¼ percent.

On August 3, 1981, petitioner employer sought reconsideration of the award, contending that Byrne's injury occurred as the result of the termination of employment rather than during the course of his employment, and was therefore noncompensable; the award was upheld by respondent board. Thereafter petitioner sought review here, which was granted.

### ISSUE

Petitioner contends here, as it did below, that Byrne's psychological problem was the result of termination of employment rather than the employment itself.

### DISCUSSION

We note that judicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence (Lab. Code, § 5952, subd. (d)); *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432]). As was stated in *Lamb* v. *Workmen's Comp. Appeals Bd.* (1970) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978], "the foregoing standard is not met by 'simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence.'" (See also, *Garza* v. *Workmen's Comp. Appeals Bd.* (1971) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

Whether an employee's injury occurred arising out of and during the course of his employment is a question of fact to be determined in light of the particular case. The respondent board's decision to uphold the workers'

compensation judge will not be disturbed where supported by substantial evidence or fairly drawn inferences, and all reasonable doubts are to be resolved in favor of the employee. (*Petrocelli* v. *Workers' Comp. Appeals Bd.* (1975) 45 Cal.App.3d 635 [119 Cal.Rptr. 620].) For injury to occur in a job-related manner, the employee must be engaged in work he was hired to perform, and the injury must occur within the period of employment and while the employee was doing something necessarily incident thereto. (*Rivera* v. *Workers' Comp. Appeals Bd.* (1977) 70 Cal.App.3d 705 [139 Cal.Rptr. 67].)

In the instant case the workers' compensation judge found that the medical evidence of two treating physicians and respondent Byrne's trial testimony established that Byrne's psychoneurotic injury was due to cumulative stress endured from January 1978 through his last day of employment, November 29, 1979. We accept the judge's finding—and the board's support for that finding—to the extent that Bryne's injury was cumulative rather than solely the result of the circumstances under which he left his employment on November 29, 1979. Petitioner's argument that the award was made for an injury occasioned by employment termination is not supported by the record. Had the record demonstrated that the injury was caused by termination, it is clear that Byrne's injury would not be compensable, because it would not be work-related within the meaning of Labor Code section 3600, which requires that an injury arise out of employment, occur in the course of employment, and be proximately caused by the employment rather than *termination of employment.* Petitioner correctly asserts that a termination for economic reasons—or for any other reason—does not invoke workers' compensation liability; of course, if the termination is wrongful, the employee is entitled to pursue other legal remedies.

The real vice of the award made in the instant case, however, is that the record does not contain substantial evidence to support the conclusion that the respondent employee's injury was *industrially related.*

It is settled that disability from a mental or nervous condition *proximately resulting* from the employment is compensable. The test is whether the injury or stress of employment is a substantial contributing factor to the disability. Psychiatric opinion must link the industrial incidents to the development of the employee's disabling psychiatric condition. Such an injury can be the result of the cumulative effect of daily stress and strain. "A psychoneurotic injury *caused* by the work environment is a compensable injury." (*Baker* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 852, 861 [96 Cal.Rptr. 279].) It is true, too, that "'industry takes the employee as it finds him'" (*Lamb, supra,* 11 Cal.3d at p. 282). The crucial

determination in matters such as the instant case is the amount of stress which the particular employment has in fact exerted on the particular workman.

Thus, substantial medical evidence must be adduced to support such an award. As *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967], explained, "not all expert medical opinion constitutes substantial evidence upon which the Board may rest its decision. [¶] Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, or on incorrect legal theories. Medical opinion also fails to support the Board's findings if it is based on surmise, speculation, conjecture, or guess." This requirement, of substantial medical evidence, was reiterated in *Insurance Co. of North America* v. *Workers' Comp. Appeals Bd. (Kemp)* (1981) 122 Cal.App.3d 905, 912 [176 Cal.Rptr. 365], as follows: "Lay testimony cannot establish psychiatric injury. Expert medical evidence must support the proposition that the employment incidents are related to the *development* of the psychiatric condition." And, "it is well established that the relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence." (*Market Basket* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 137, 144 [149 Cal.Rptr. 872].)

We note that another division of this court very recently annulled an award for psychiatric injury, concluding, as we do herein, that there was no substantial evidence in support of the crucial finding that the employment played "an 'active' or 'positive' role in the development of the psychological condition." (See *Twentieth Century-Fox Film Corp.* v. *Workers' Comp. Appeals Bd. (Conway)* (1983) 141 Cal.App.3d 778, 783 [190 Cal.Rptr. 560]; *Albertson's Inc.* v. *Workers' Comp. Appeals Bd. (Bradley)* (1982) 131 Cal.App.3d 308, 317 [182 Cal.Rptr. 304].) In the *Twentieth Century-Fox* case, the court declared that "it is not sufficient for the purposes of finding industrial causation if the nature of the employee's duties 'merely provided a stage' for the injury" (141 Cal.App.3d at p. 783); the court also stated that it is incumbent on the workers' compensation judge (and the board) to make findings demonstrating the relationship between the employment and the psychiatric opinion (141 Cal.App.3d at p. 784).

We are presented here with a similar problem. It is immediately clear that the medical evidence relied upon by the workers' compensation judge and by the board to support the award left a great deal to be desired—and in fact did not meet minimal requirements of substantial evidence. The judge herein declared, in making the award, that he had relied on the medical

report of Robert L. Amstadter, M.D., on April 30, 1980, which advised that employee Byrne had been referred to him for psychiatric evaluation January 8, 1980, and showed evidence of "severe depression . . . a severe anxiety reaction." Dr. Amstadter described certain physical symptoms related to him by the patient, i.e., "dizziness, shortness of breath, numbness and 'pins and needles,' insomnia headaches, muscular tightness, sensations of the left extremities as 'somatization' of the depression and anxiety he has experienced as a result of job related conflicts." In the two-page letter report, Dr. Amstadter goes on to state that "Mr. Byrne reported that he has experienced an exacerbation of these symptoms *in December 1979 when he was told by his supervisor that he would have to work longer hours or be fired.* Work related pressures definitely appear to be a major factor in causing his present conditions." Dr. Amstadter expressed the opinion that Byrne's condition would be aggravated by a return to his employment at Georgia-Pacific; that he was in need of continued therapy, and might with improvement be able to ultimately participate in a job retraining program. The diagnosis was repeated: "Depressive Neurosis, Anxiety Neurosis." The Amstadter report contains information concerning the circumstances of Byrne's leaving his employment which is contrary to Byrne's testimony at trial and to that in another medical report. *The doctor's broad conclusion that Byrne's condition was work-related is not sufficient as no specific connections were described.*

The Workers' Compensation Appeals Board Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2, § 10606) provides as follows: "The Workers' Compensation Appeals Board favors the production of medical evidence in the form of written reports. . . . These reports should include . . .:

"(a) the date of the examination;

"(b) the history of the injury;

"(c) the patient's complaints;

"(d) the source of all facts set forth in the history and complaints;

"(e) findings on examination;

"(f) opinion as to the extent of disability and work limitations, if any;

"(g) cause of disability;

"(h) medical treatment indicated;

"(i) opinion as to whether or not permanent disability has resulted from the injury and whether or not it is stationary. If stationary, a description of the disability with a complete evaluation; and

"(j) the reason for opinions."

Understandably, when the respondent board affirmed the trial judge's decision, reference was made to another medical report, dated July 29, 1980, by Norman I. Barr, M.D. This report was far more adequate than the first medical report, in terms of section 10606 requirements, but again was premised on the belief that Byrne was "essentially fired" from his job, which conflicts with Byrne's trial testimony. As for the specific job pressures, Dr. Barr found it difficult "to put [his] finger on exactly what the problem was"; according to Barr, Byrne told him that "his problems at work began in mid-1979 when new management took over. They began to pressure him primarily because of his work schedule. In November 1979, he was asked to come in and work on a Saturday, although he had never worked Saturdays in the past." Not a word of this was mentioned by Byrne in his testimony before the compensation judge, and this account of his stress and strain at work varies from not only Byrne's trial testimony but from accounts given to the other doctors treating and evaluating him. Barr diagnosed Byrne as having a conversion disorder ". . . the onset of [his] physical symptoms appear to be related to the effective date of his being fired in November 1979"; he also found Byrne suffering from a " 'histrionic personality disorder' manifested by self-dramatization, tendency toward activity and excitement, and over-reaction to emotional stimuli, with associated emotional distancing and egocentricity."

During the course of Byrne's treatment in 1977, at which time he was hospitalized for symptoms indicating the possibility of a blood clot, Byrne told his attending physician that he drank very, very heavily. Byrne denied making this statement when asked about it at trial; he explained that his alcoholic intake is limited to "five or six beers" on Friday nights.

The record also contains the report of John Hochman, M.D., who examined the employee on behalf of petitioner Georgia-Pacific. Hochman did considerable testing and examination of the patient, and reviewed all the previous medical records. Hochman, a psychiatrist, did not rule out an organic cause for Byrne's present difficulties. He diagnosed Byrne as developing "cerebral atrophy due to chronic alcoholism." Byrne's physical symptoms and mental state correlated closely, according to Hochman, with

the type of mental deterioration which occurs in a certain percentage of alcoholics.

We are, of course, precluded from substituting our choice of the most convincing evidence, medical or otherwise, for that of the compensation judge or the board. However, in the instant case, in view of the speculative nature of the medical reports upon which the board relied, and the reports' failure to either provide a history consistent with Byrne's testimony or to make specific conclusions demonstrating that the employment was an active factor in the development of Byrne's condition, we decline to find that these reports constituted adequate medical, or substantial evidence.

### DISPOSITION

The award is annulled, and the matter remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.[1]

Lillie, Acting P. J., concurred.

**DALSIMER, J.**—I respectfully dissent.

The whole burden of the petition for review filed by the permissibly self-insured employer was that the public policy of the State of California should not permit and does not permit compensation to an employee for injury to the nervous system and psyche arising at or occurring after an economic job termination or layoff. It is conceded by both the petitioner and the majority that the applicant employee has sustained and does suffer from injury

---

[1]Contrary to the implication contained in the dissenting opinion, there is no question that job related disability psychiatric conditions are subject to compensation under workers' compensation laws. However, in our view, any such compensation must be supported by proof in the form of *adequate* medical reports. We note that the dissenting opinion ignores both the language in the state Supreme Court's opinion in *Hegglin* v. *Workmen's Comp. App. Bd., supra*, 4 Cal.3d 162, 169 quoted in this majority opinion and the *inadequacies* of the medical reports of Drs. Amstadter and Barr which were relied upon by the workers' compensation judge and the respondent board. The need for *adequate* medical reports is manifest in view of the mushrooming workers' compensation claims for psychiatric problems. This is especially so since workers' compensation judges and boards must rely primarily on medical reports highly subjective (as distinguished from objective) in character emanating from the medical field of psychiatry.

Moreover, while our review is limited, we do not construe our role on review to be one of merely mechanical legal robots applying a rubber stamp to each case. Superimposed upon our function is a heavy overlay directed at the pursuit of evenhanded justice and application of common sense.

to his nervous system and psyche. The workers' compensation judge's finding sustained by the Workers' Compensation Appeals Board was that employee Byrne suffered a psychoneurotic injury due to cumulative stress endured from January 1978 through his last day of employment, November 29, 1979. The majority specifically holds, "We accept the judge's finding—and the Board's support for that finding—to the extent that Byrne's injury was cumulative rather than solely the result of the circumstances under which he left his employment on November 29, 1979. Petitioner's argument that the award was made for an injury occasioned by employment termination is not supported by the record." (Majority opn., *ante*, at p. 75.)

This holding by the majority disposes of the only issue raised by petitioner in this case. The petition, based upon such a finding by the majority, should be denied. Rather than following this course, however, the majority, *sua sponte*, questions whether there is substantial evidence to support the conclusion that the employee's injury was industrially related.

The decision of the majority on the issue raised solely by the majority is simply not supported by the record. As the majority correctly states, "judicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence [citations]." (Majority opn., *ante*, at p. 74.) Again, as the majority concedes, the finding as to whether the employee's injury arose out of and occurred during the course of his employment is a question of fact to be determined by the workers' compensation judge. Citing *Petrocelli* v. *Workmen's Comp. Appeals Bd.* (1975) 45 Cal.App.3d 635 [119 Cal.Rptr. 620], the majority further notes that the respondent board's decision to uphold the finding of the workers' compensation judge should not be disturbed where supported by substantial evidence or fairly drawn inferences and that all reasonable doubts are to be resolved in favor of the employee. Having thus correctly set forth the standards for review, the majority proceeds to disregard them.

In this case, the workers' compensation judge found that the medical evidence of two treating physicians taken together with respondent's testimony established that the respondent's psychoneurotic injury was due to the cumulative work-related stress endured from January 1978 to the layoff on November 29, 1979. It is settled law that disability for mental or nervous breakdown proximately resulting from an industrial injury is compensable. The test is whether the injury or stress of employment is a substantial contributing factor to the disability. Psychiatric opinion must link the industrial incidents to the development of the employee's disabling psychiatric condition. Such an injury can be the result of the cumulative effect of daily

stress and strain. (*Baker* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 852, 861 [96 Cal.Rptr. 279].)

The majority opines that the medical evidence relied upon by the workers' compensation judge and by the board did not meet minimal requirements of substantial evidence. Dr. Amstadter, a psychiatrist, reported as follows: " 'Mr. Byrne shows evidence of severe depression. In his appearance, his expression is one of dejection. Thought content is negative and Mr. Byrne tends to ruminate on employment conditions which he feels have caused present problems. He experiences loss of efficiency and self confidence, diminished pleasure in previously rewarding activities, preoccupation with matters of personal inadequacy and feelings of worthlessness. Mr. Byrne displays a severe anxiety reaction. [¶] The numerous bodily complaints he experiences such as dizziness, shortness of breath, numbness and "pins and needles," insomia [*sic*], headaches, muscular tightness, sensations of the left extremities appear to be somatization of the depression and anxiety he has experienced as a result of job related conflicts. [¶] Mr. Byrne reported that he has experienced an *exacerbation* of these symptoms in December 1979 when he was told by his supervisor that he would have to work longer hours or be fired. Work related pressures definitely appear to be a major factor in causing his present condition.' " (Italics supplied.)

The majority's objection to the doctor's conclusion that the employee's condition was work related as being not sufficient because no specific connections were described seems to be more of an objection to the policy of awarding compensation for injury to the psyche than it does an objection to the evidence. The testimony adduced at the hearing established that the applicant was subjected to stressful conditions during the period in question when he worked as the head of the quality control department and as a safety supervisor overseeing all three shifts, working as much as thirteen hours a day. The details of these conditions which caused him to be nervous, taken with the inferences drawn in the report of the doctor, indubitably provided the minimum evidence which controls the appellate court when reviewing the factual findings of the workers' compensation judge and the Workers' Compensation Appeals Board.

The majority's reliance on *Twentieth Century-Fox Film Corp.* v. *Workers' Comp. Appeals Bd.* (1983) 141 Cal.App.3d 778 [190 Cal.Rptr. 560] is misplaced. In the *Twentieth Century-Fox* case, the workers' compensation judge failed to discuss his conclusion as to the relationship between the employment and the psychiatric condition. Further, the board in denying

reconsideration merely incorporated the report of the workers' compensation judge. Neither the workers' compensation judge nor the board specifically determined whether the employment in fact played an active or positive role in the development of the psychological condition or whether the employment was a mere passive element that the applicant happened to focus on. Based upon that ground, the court held that it must remand the case for proper findings. In the case at bench, the workers' compensation judge in fact did discuss the reasons for his decision and did make specific findings as follows: " 'The evidence establishes that in 1977 the applicant first developed emotional problems. The emotional problems that occurred in 1977 were not caused or aggravated by his job. [¶] Applicant came under stress at work beginning January 2, 1978 and culminating with the elimination of his job and the events of November 29, 1979. The cumulative stress from January 2, 1978 to November 29, 1979, resulted in an aggravation and worsening of applicant's underlying and disabling non-industrial condition on November 29, 1979 when applicant became ill at work. Therefore it is found that applicant did sustain an injury arising out of and occuring [sic] in the course of his employment from January 2, 1978 through November 29, 1979.' "

As is noted by the court in *Twentieth Century-Fox,* "A finding of industrial injury must be supported by substantial evidence, which includes both competent lay and medical evidence. [Citation.]" (*Id.,* at p. 784.) The lay applicant's testimony was corroborated by the reports of the experts, Dr. Amstadter, Dr. Barr, another psychiatrist, and Dr. Hachman, a psychiatrist employed by the employer, which all described psychiatric injuries to the applicant. Both Dr. Barr and Dr. Amstadter found that those injuries were caused by work-related pressures.

Significantly, there is no evidence in the record to indicate that applicant's injuries were not caused by his work-related depressions. "The [workers' compensation judge] 'must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached.' [Citation.]" (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432].) I submit that the workers' compensation judge and the board complied with this injunction only to be met with the majority's disregard of it.

The petition should be denied.