97 Cal.Rptr.2d 411 (2000)
81 Cal.App.4th 1033
Rodney Scott PEARL, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD; Board of Trustees of the California State University, Respondents.
No. B125991.
Court of Appeal, Second District, Division Six.
June 26, 2000.
Review Granted October 3, 2000.
*412 Lemaire, Faunce, Pingel & Singer, Edward L. Faunce, Seal Beach, and Larry J. Roberts for Petitioner.
California Applicants' Attorneys Association, Amicus Curiae Committee, Joseph V. Capurro as Amici Curiae on behalf of Petitioner.
Carlos Cordova, San Luis Obispo, for Respondent Board of Trustees of the California State University.
Richard B. Maness, Kayla J. Gillan and Nathan D. Schmidt, Sacramento, for California Public Employees' Retirement System as Amici Curiae.
No appearance for Respondent Workers' Compensation Appeals Board.
GILBERT, P.J.
The Public Employees' Retirement Board (PERB) awarded petitioner Rodney Scott Pearl a non-industrial disability retirement for injury to his psyche. Pearl asserts his disability is industrial. If so, he is entitled to a higher disability retirement allowance.
A dispute whether the disability is industrial is decided by the Workers' Compensation *413 Appeals Board (WCAB) under Government Code section 21166.[1] Pearl petitioned the WCAB for a finding of industrial disability. It found that Pearl's disability was not industrial under Labor Code section 3208.3, as amended.[2] Pearl now petitions for review of the decision of the WCAB.
We conclude the WCAB correctly applied workers' compensation law (WCL) in making its determination, and that amended section 3208.3 applies to Pearl even though he had a right to a pension prior to the amendment. We therefore deny the petition.

FACTS
California Polytechnic State University hired Pearl as a police officer in 1990. In 1996, Pearl applied to the California Public Employees' Retirement System (PERS) for disability retirement under Government Code section 21151 for psychiatric injury caused by his employment. In March 1997, PERB approved a non-industrial disability retirement. Pearl petitioned the WCAB for findings of fact pursuant to Government Code section 21166.
The workers' compensation judge (WCJ) considered the reports of two psychiatrists. Dr. Wells opined that "cumulative trauma in the work place represented fifty-one percent or more of all causal factors." Dr. Grattan, on the other hand, "ascribe[d] twenty-five percent [of psychiatric injury] to the actual events and perceived stresses in his work...." The WCJ found that Doctor Grattan's opinion was "well reasoned and indeed compelling" and determined that Pearl's disability was non-industrial under section 3208.3, as amended.
Pearl petitioned the WCAB for reconsideration arguing that section 3208.3 is inapplicable to disability retirement determinations under Government Code section 21166. Pearl argued in the alternative that if section 3208.3 applied, the version in effect at the time he was hired in 1990 is applicable. Pearl contended that if the amended version of the statute were applied to him, it would unconstitutionally impair vested pension rights.
The WCJ recommended denial of the petition for reconsideration on the grounds that section 3208.3 is incorporated into Government Code section 21166 and the amended version of section 3208.3 applies because Pearl's injury did not occur until after the effective date of the 1993 amendment.
The WCAB adopted this recommendation and denied Pearl's petition for reconsideration. Pearl filed a petition for writ of review. In February 1999, we denied the petition. Pearl petitioned the California Supreme Court for review. The Supreme Court granted the petition and transferred the case to this court. Upon transfer, we issued the writ. After consideration of its merits, we deny the petition.

*414 DISCUSSION
The exclusive remedy available to challenge a decision of the WCAB is a writ of review. (§ 5950; Gov.Code, §§ 21168-21170.) Pearl asserts that this remedy denies him the right to independent review of a determination regarding a fundamental vested right and therefore this court should regard his petition as one for writ of administrative mandamus. (Code Civ. Proc., § 1094.5.) Pearl's argument is without merit. Government Code sections 21168-21170 require appellate courts to review decisions under Government Code 21166 by writ of review. We may not disregard statutory language. (Organization of Deputy Sheriffs v. County of San Mateo (1975) 48 Cal.App.3d 331, 340, 122 Cal.Rptr. 210.) Moreover, the issues Pearl raises on appeal do not involve substantiality of the evidence; they involve questions of law which we review de novo in all cases. (Mote v. Workers' Comp. Appeals Bd. (1997) 56 Cal.App.4th 902, 909, 65 Cal. Rptr.2d 806.)

Section 3208.3 applies to determinations made under Government Code section 21166
Before section 3208.3 was adopted in 1989, the standard defining an industrial psychiatric disability was the same as that for an industrial physical disability whether the injury arose out of or in the course of employment. (Gov.Code, § 20046[3]; § 3600, subd. (a).[4]) Under this standard, injury was deemed service-connected if the industrial component was "real and measurable" (Bowen v. Board of Retirement (1986) 42 Cal.3d 572, 578, 229 Cal.Rptr. 814, 724 P.2d 500); "material and traceable" (Pacheco v. Board of Retirement (1986) 188 Cal.App.3d 631, 635, 233 Cal.Rptr. 461); or "a substantial contributing factor" (Georgia-Pacific Corp. v. Workers' Comp. Appeals Bd. (1983) 144 Cal.App.3d 72, 74-75, 192 Cal.Rptr. 643, disapproved on other grounds in Shoemaker v. Myers (1990) 52 Cal.3d 1, 276 Cal. Rptr. 303, 801 P.2d 1054).
In 1990, section 3208.3 raised the threshold of industrial causation for psychiatric injuries. "Actual events" of employment had to be responsible for at least 10 percent of the total causation from all sources contributing to the psychiatric injury. The statute was amended, effective July 16, 1993, and now requires that actual events of employment be "predominant" as to all causes of the psychiatric injury.
Pearl asserts that only the Public Employees' Retirement Law (PERL) can be applied to determinations made under Government Code section 21166 and that Government Code section 20046 continues to be the standard for determining whether a psychiatric disability qualifies as industrial under PERL. If Pearl is correct, he is entitled to an industrial disability retirement because both psychiatric reports meet the threshold of industrial causation stated in Government Code section 20046.
PERL and the WCL contain substantially similar definitions of industrial disability and the courts have given them a similar construction. (See, e.g., Board of Administration v. Ind. Acc. Com. (1961) 195 Cal.App.2d 719, 723-724, 16 Cal.Rptr. 134 ["it is clear that the `industrial injury' within the meaning of the State Employees' Retirement law is essentially synonymous with `injury' which is compensable under section 3600 of the Labor Code"]; *415 see also United Public Employees v. City of Oakland (1994) 26 Cal.App.4th 729, 733, 31 Cal.Rptr.2d 610 ["[a]ll the statutes on this same subject of employee benefits in the public sector, using the same statutory definition, must be read together"].)
We must assume that the Legislature has existing laws and judicial decisions in mind when it enacts a new law. (Estate of McDill (1975) 14 Cal.3d 831, 837, 122 Cal.Rptr. 754, 537 P.2d 874.) We cannot assume that the Legislature amends statutes by implication. (Nickelsberg v. Workers' Comp. Appeals Bd. (1991) 54 Cal.3d 288, 298, 285 Cal.Rptr. 86, 814 P.2d 1328.) The Legislature expressed no intent to change the parallel construction the courts have given to PERL and the WCL. The Legislature did not amend Government Code section 21166 nor any other provision of PERL to preclude application of section 3208.3 to PERS disability determinations either when it enacted or amended section 3208.3. (See People v. Olsen (1984) 36 Cal.3d 638, 647, fn. 19, 205 Cal.Rptr. 492, 685 P.2d 52 [failure of the Legislature to change the law in a particular respect when the subject is generally before it indicates an intent to leave the law as it stands in the aspects not amended]; see also Brusso v. Running Springs Country Club, Inc. (1991) 228 Cal.App.3d 92, 101, 278 Cal.Rptr. 758 [in the absence of any express repeal or amendment, a new provision is presumed to be in accord with the legislative policies embodied in a prior statute].)
We disagree with Pearl that Government Code section 21166 should not be read to incorporate section 3208.3 because PERL and the WCL serve different purposes. The express goals of the statutes differ, but it is irrefutable that each deals with the same general subject matterthe welfare of injured employees and their dependents. (See, e.g., Reynolds v. City of San Carlos (1981) 126 Cal.App.3d 208, 213, 178 Cal.Rptr. 636 ["[although the workers' compensation law [citations] and the Public Employees' Retirement Law [citation] are not coordinated in all respects and are administered by independent boards, it is clear that they supplement each other"]; see also United Public Employees v. City of Oakland (1994) 26 Cal.App.4th 729, 733, 31 Cal.Rptr.2d 610 [in light of common purpose and similar wording, statutes in the Labor Code and Government Code designed to provide special benefits to employees engaged in "active law enforcement service" are to be construed together].)
We also disagree that the legislative history of section 3208.3 shows an intent to limit that section to workers' compensation injuries. Section 3208.3 was enacted to respond to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries. (See Hansen v. Workers' Compensation Appeals Bd. (1993) 18 Cal.App.4th 1179, 1184, 23 Cal.Rptr.2d 30 ["[f]or years commentators have written critically about problems unique to the disposition of psychiatric claims, notably vagueness in defining the injury and problems of establishing industrial causation and apportionment"].)
The Governor's signature message to the California Assembly contained the following language: "[E]qually important, these reforms crack down on those who are defrauding the system. This legislation marks the beginning of the end for the stress-mill millionaires." (Letter from Governor Wilson to the Members of the California Assembly, July 16, 1993.)
We do not believe the Legislature intended to limit the effect of section 3208.3 to the WCL. (See Green v. Rake Engineering Co. (1998) 19 Cal.4th 66, 89, 78 Cal.Rptr.2d 16, 960 P.2d 1046 [the court may recognize a public policy exists in the absence of legislative declaration].) Such limitation would lead to an absurd result: eliminating fraudulent stress claims in the workers' compensation system but permitting *416 them to continue unchecked in the retirement system. (See California Bldg. Industry Assn. v. Governing Bd. (1988) 206 Cal.App.3d 212, 237, 253 Cal.Rptr. 497 ["[w]here the language of a statute is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted"].) Such a consequence is itself sufficient justification to defeat Pearl's construction of the statute. (Calatayud v. State of California (1998) 18 Cal.4th 1057, 1072, 77 Cal. Rptr.2d 202, 959 P.2d 360.)
Pearl argues that Government Code section 21166 contains language indicating legislative intent to limit section 3208.3 to disability determinations under the WCL. He relies on the phrase that states that industrial disability be determined by "using the same procedure as in workers' compensation hearings." Pearl interprets this language as incorporating only the hearing procedures of the WCL. We do not believe that the Legislature intended to restrict the term "procedure" to hearing procedures only and we interpret the phrase as encompassing all relevant provisions in Division 4 of the WCL.
Moreover, the Legislature presumably delegated the determination of industrial causation to the WCAB because of its "long-acknowledged administrative expertise" in this area. (LeVesque v. Workmen's Comp.App. Bd. (1970) 1 Cal.3d 627, 635, 83 Cal.Rptr. 208, 463 P.2d 432.) This delegation of authority would be meaningless if the WCAB were prohibited from applying the substantive law of the WCL. (See Pacific Law Group: USA v. Gibson (1992) 6 Cal.App.4th 577, 582, 7 Cal. Rptr.2d 878 [courts are required to give statutes a reasonable and commonsense interpretation which will result in wise policy rather than mischief or absurdity].)
Pearl also argues that section 3208.3 is inapplicable to determinations made under Government Code section 21166 because section 3208.3, subdivision (c), says: "It is the intent of the Legislature in enacting this section to establish a new and higher threshold of compensability for psychiatric injury under this division." (Emphasis added.) Relying on City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752, Pearl asserts section 3208.3 cannot be applied to disability determinations under Government Code section 21166 because it is not in Division 4 of the Labor Code. City of Moorpark involved exclusivity of workers' compensation remedies, not incorporation of statutes by reference. "[T]his division" in section 3208.3 is most reasonably construed as a term of inclusion, not a term of exclusion. The Legislature likely used the term in section 3208.3 as it had in other related provisions of Division 4as a shorthand expression to distinguish Division 4, containing the compensation provisions of the WCL, from the other divisions of the WCL. (E.g., § 3600, subd. (a) ["[liability for the compensation provided by this division"]; & § 3207 [defining "compensation" as "compensation under Division 4 ... includ[ing] every benefit or payment conferred by Division 4 upon an injured employee"].)

Application of section 3208.3 as amended does not impermissibly interfere with Pearl's vested pension rights
Pearl also argues that if section 3208.3 is incorporated into Government Code section 21166, then only the original version of the statute can be applied to him because his pension rights vested when he was hired in 1990. He asserts that if the amended version is applied, a violation of the contract clauses of the California and federal Constitutions would occur.[5]
*417 The rule that pension rights of an employee vest at the time of hire is well established. (Miller v. State of California (1977) 18 Cal.3d 808, 817, 135 Cal.Rptr. 386, 557 P.2d 970; Kern v. City of Long Beach (1947) 29 Cal.2d 848, 852-853, 179 P.2d 799.) But the rule is qualified. "`[A] public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension.'" (Miller, supra, at p. 816, 135 Cal.Rptr. 386, 557 P.2d 970; International Assn. of Firefighters v. City of San Diego (1983) 34 Cal.3d 292, 300-301, 193 Cal.Rptr. 871, 667 P.2d 675; Kern, supra, at pp. 853-855, 179 P.2d 799.)
Consistent with these principles, the Supreme Court has determined that "[s]ince the industrial injury is the basis for any compensation award, the law in force at the time of injury is to be taken as the measure of the injured person's right of recovery." (Aetna Cas. & Surety Co. v. Ind. Acc. Com. (1947) 30 Cal.2d 388, 392, 182 P.2d 159; see also State Comp. Ins. Fund v. Workers' Comp. Appeals Bd. (1977) 71 Cal.App.3d 133, 136, 139 Cal. Rptr. 410 [same].) Thus, the vesting of retirement benefits must be distinguished from the maturing of those benefits, which occurs only after the condition(s) precedent to the payment of the benefits has taken place. (See Kern v. City of Long Beach, supra, 29 Cal.2d at p. 851, 179 P.2d 799 [pension benefits vest upon happening of contingency upon which the pension becomes payable]; see also Terry v. City of Berkeley (1953) 41 Cal.2d 698, 702-703, 263 P.2d 833, and cases cited.)
This principle is well-illustrated in Miller v. State of California, supra, 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970. Our Supreme Court held that no contract clause violation occurred when the Legislature reduced the mandatory age of retirement thereby defeating Miller's expectation of a maximum pension. The court reasoned: "Although his right to a pension based on this system was vested, plaintiff was not assured of receiving maximum pension benefits. His right to receive such benefits was subject to conditions and contingencies; specifically, that he remain in state employment until age 70. Plaintiff failed to satisfy that condition since he was lawfully placed on retirement at age 67. Thus, his right to a maximum pension based on retirement at age 70 never matured." (Id. at p. 817, 135 Cal.Rptr. 386, 557 P.2d 970.)
The right to an industrial disability retirement could not and did not vest at the time Pearl was hired because the contingency triggering the enhanced benefit, injury to his psyche, had not yet occurred. Thus, the adoption and amendment of section 3208.3 did not impair a vested right; it merely modified a contingency or condition.
Pearl's reliance on Allen v. City of Long Beach (1955) 45 Cal.2d 128, 287 P.2d 765 and Abbott v. City of Los Angeles (1958) 50 Cal.2d 438, 326 P.2d 484 is misplaced for the reason stated in Miller v. State of California, supra., 18 Cal.3d at p. 818, 135 Cal.Rptr. 386, 557 P.2d 970: "Since we conclude that plaintiffs loss of a larger retirement allowance resulted from his lawful termination before his right to it matured, we need not undertake the method of analysis required by Allen and Abbott for determining whether the changes in the state's pension system were reasonable. Suffice it to say plaintiff suffered no impairment of vested rights."
While PERL should be construed liberally in favor of the applicant, this rule of liberal construction cannot be permitted to eradicate legislative purpose behind the law or to render eligible for disability retirement those for whom the law obviously was not intended. (Haywood v. American *418 River Fire Protection Dist. (1998) 67 Cal. App.4th 1292, 1304, 79 Cal.Rptr.2d 749.) Pearl is bound by the laws that were in effect at the time he was injured, including section 3208.3, as amended.
We conclude that the WCAB properly denied Pearl's petition for reconsideration. The writ petition is denied. The parties are to bear their own costs.
YEGAN, J., and PERREN, J., concur.
NOTES
[1] Government Code section 21166 provides: "If a member is entitled to a different disability retirement allowance according to whether the disability is industrial or nonindustrial and the member claims that the disability as found by the board ... is industrial and the claim is disputed by the board, ... the Workers' Compensation Appeals Board, using the same procedure as in workers' compensation hearings, shall determine whether the disability is industrial."
[2] All statutory references are to the Labor Code unless otherwise specified. Section 3208.3, as amended, provides, in pertinent part:

"(a) A psychiatric injury shall be compensable if it is a mental disorder which causes disability or need for medical treatment....
"(b)(1) In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury....
"(c) It is the intent of the Legislature ... to establish a new and higher threshold of compensability for psychiatric injury under this division."
[3] Government Code section 20046 provides: "`Industrial,' in reference to the death or disability of any member of this system who is in a membership category under which special benefits are provided by this part because the death or disability is industrial, means disability or death as a result of injury or disease arising out of and in the course of his or her employment as such a member."
[4] Section 3600, subdivision (a), provides: "Liability for the compensation provided by this division ... shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment...."
[5] Article I, section 10 of the United States Constitution provides, in pertinent part, "No state shall ... pass any ... [l]aw impairing the Obligation of Contracts...." Similarly, article I, section 9 of the California Constitution provides, in pertinent part, "A ... law impairing the obligation of contracts may not be passed."