68 So.2d 21

### BAGGETT TRANSP. CO.
### v.
### HOLDERFIELD.
**7 Div. 195.**

Supreme Court of Alabama.

Aug. 11, 1953.

Rehearing Denied Nov. 27, 1953.

Lange, Simpson, Robinson & Somerville and Reid B. Barnes, Birmingham, for appellant.

Copeland & Copeland and Geo. C. Hawkins, Gadsden, for appellee.

MERRILL, Justice.

Certiorari was granted on petition of Baggett Transportation Company, a corporation, to review a final judgment of the Circuit Court of Etowah County awarding compensation to the plaintiff, R. E. Holderfield, for injuries received while he was an employee of said company. The proceedings were instituted in the trial court under the Alabama Workmen's Compensation Law, Chapter 5, Title 26, Code 1940.

The trial judge made a full statement of the facts, his conclusions thereon and his views of the law applicable thereto. We do not set out the statement in full but merely state the effect' of the findings which are applicable to this appeal.

Plaintiff's complaint stated a cause of action and included this statement: "Plaintiff admits that defendant has paid to him the sum of $357 as compensation for and on account of the injuries alleged herein, and plaintiff is informed that defendant company has paid hospital and doctors bills in the sum of approximately $400 for medical care received by him on account of said injuries." It is admitted by both parties that plaintiff and defendant were subject to the Workmen's Compensation Act of Alabama at the time the injuries occurred.

The answer of defendant alleges that plaintiff was paid his full wages of $51 per week for seven weeks ($357) while plaintiff was disabled from doing any work as a result of his injuries, and claims a set-off against plaintiff in the sum of $420.25 due by promissory note executed by plaintiff to the American National Bank of Gadsden, Alabama, which defendant had endorsed as surety and had paid and which was transferred to the defendant.

The plaintiff was working for defendant on September 12, 1950. During that day and prior thereto, some of defendant's employees were engaged in a strike or work stoppage and were picketing the entrance to defendant's Gadsden terminal. Plaintiff was employed to fill the job of truck driver formerly held by one of the striking employees, and the employees showed resentment toward plaintiff by calling out in a threatening manner as plaintiff drove in and out of defendant's terminal in the truck assigned to him. On September 12th plaintiff had performed his duties in a normal manner and had no contact or discussion with the men on the picket line, except when he went in and out of the premises, at which time the strikers would call out to him. He entered the premises of the defendant on his last run at approximately 4:00 P.M. and punched his time card at approximately 6:30 P.M. He and other employees waited for a considerable length of time at the suggestion of defendant's manager before attempting to leave the terminal and pass through the picket line. At approximately 7:30 P.M. plaintiff left the defendant's premises in his automobile occupied by two other persons, one of whom was also an employee, and set out for his home which was about seventeen miles from Gadsden. Immediately upon his leaving two of the striking employees who had made threatening remarks, followed him in an automobile together with another automobile containing striking employees. They pursued plaintiff at close range and at high speed as he drove away from the terminal toward the City of Gadsden on the public highway. He saw them and attempted to elude them by swerving off Third Street to First Street at an intersec-

tion. One pursuing car failed to make the turn and continued down Third Street and reentered First Street at the intersection of Bay and First and picked up the close pursuit. At the intersection of First and Broad Street, which is approximately one mile from the defendant's terminal, the pursuing cars forced plaintiff to the curb. As he alighted from his automobile, having been forced to stop, one of the strikers shot him with a shotgun wounding him in the left leg, right thigh, scrotum and other parts of the body.

There is no question but that when the plaintiff left the terminal in his car and while he was driving on the public streets of Gadsden to the point where he was forced to stop by the strikers, he had finished all of his duties for the day, was on his way home and his intention was not to return to his work until the next morning.

Appellant does not complain of the amount of the award in the event it is found to be liable.

This case turns on the construction of Title 26, § 262, subsection (j), which reads:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared: Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service at the time of the accident, and during the hours of service as such workmen, and shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment, and it shall not include a disease unless the disease results proximately from the accident."

As we understand it, appellant does not insist that the accident in question did not arise out of plaintiff's employment, but the question is was the accident "in the course of his employment," since his injuries oc-

curred about one mile from defendant's premises while he was going home from his work in his own automobile.

At the outset we enumerate several applicable principles heretofore declared by this Court. In Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666, 668, this Court said:

"This court long ago announced the rule governing our review of cases arising under the Workmen's Compensation Act. We have uniformly held that if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, the finding and judgment will not be disturbed. Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458. For later cases see Houser v. Young, 247 Ala. 562, 25 So.2d 421; Malbis Bakery Co., Inc., v. Collins, 245 Ala. 84, 15 So.2d 705."

In Barnett v. Britling Cafeteria Co., 225 Ala. 462, 143 So. 813, 85 A.L.R. 85, the Court said:

"It is, of course, the general rule that, if an employee is injured while going to or from his work to his home, or to or from some point not visited for the discharge of a duty arising out of the employment, or while in the use of a public highway used by the public generally, he does not come within the protection of the Workmen's Compensation Act. But there is an exception to the general rule, and the employment is not limited by the actual time when the workman reaches the scene of his labor and begins it nor when he ceases, but includes a reasonable time, space, and opportunity before and after while he is at or near his place of employment. One of the tests is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazard as to be, in effect, at the place and under the protection of the act."

In Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 878, 880, we find:

"As to whether or not an accident is one arising out of and in the course of the employment must depend upon the particular facts and circumstances, and as said in Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532, 'No exact formula can be laid down which will automatically solve every case.'"

In Southern Cotton Oil Co. v. Bruce, supra, it was said:

"The phrase 'in the course of his employment' refers to the time, place, and circumstances under which the accident took place. An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it. Mobile Liners, Inc. v. McConnell, 220 Ala. 562, 126 So. 626."

We do not find agreement in other jurisdictions where the injury did not occur on the premises of the employer. Most of the cases in other jurisdictions cite one of two cases decided by the Court of Appeals of New York, which, while they can be distinguished on the facts, appear to reach different conclusions. The first case, decided in 1923, is Lampert v. Siemons, 235 N.Y. 311, 139 N.E. 278, 279. Lampert was an employee and was continuing to work during a strike. He sought protection from his employer in going to and from his work, and Mr. Siemons, the company president, had the general manager accompany Lampert from the factory to his home at night and to call for him in the morning and come with him to his place of work. One morning the general manager was unable to accompany Lampert and Lampert was met on his way to work by one of the strikers who assaulted him, causing permanent injury to his eye. It was conceded that the injury arose out of his employment. The question was whether it was received in the course of his employment.

We quote two paragraphs from the opinion, wherein the court said:

"Had there been no strike, Lampert's employment would have ended when he left the factory at 134 West Thirty-Ninth street. His work was indoor work as foreman of the operating room. There was no work for Lampert to do for his employer after he left the factory at night and before he reached there in the morning. Therefore, all the authorities agree that, while going to and from his work, Lampert, if injured, would not come under the Workmen's Compensation Law (Consol.Laws, c. 67), as such injury would not have arisen in the course of his employment. * * *

"The application of the rule which has been made by the court below would carry us very far afield. If, under ordinary circumstances and within the authorities first above cited, Lampert was not carrying on any work for which he was employed while going home or coming to the factory, what was there in the strike which could possibly change this fact? The strike could not extend the field of his employment or the limits of his occupation unless he were employed to do something in connection with the strike, which of course is not this case. That he was in danger on the streets because of the strike is beyond question, but the danger existed at all times, and not necessarily while Lampert was going to and from his work. He could have been assaulted by a striker on the streets while he was going from his home to do an errand or while going to the theater or to a dance or other place of amusement. If the limits of his employment can be extended under such circumstances to cover the distance between his home and the factory, why cannot those limits also be extended to reach any place and any activity which the workman may be after working hours? The danger may exist in one place as well as another. The fact that the employer may have offered or ordered protection from strikers to the employee while he was upon the street and after the hours of his work would not or could not change the nature of his work or the time of its commencement and completion. The statute says that an employee must be injured while in the course of his employment. In this case Lampert's employment ceased when he left the factory."

The order of the lower court making the award was reversed.

The other case is that of Field v. Charmette Knitted Fabric Co., 245 N.Y. 139, 156 N.E. 642, 643, decided in 1927. The opinion was written by Chief Justice Cardozo. One Field was general manager of a mill. He discharged one Magid who refused to leave and following angry words, they probably would have fought, had not other workmen pulled Magid away. A few minutes later, at quitting time, Field went downstairs and out of the building. Magid was waiting for him on the sidewalk, three or four feet from the door and challenged him to fight. Field tried to walk away but Magid struck him in the face. He fell backward, fracturing his skull, and died. We quote from the opinion as follows:

"The argument is made, however, that the injury did not arise 'in the course of employment' (Workmen's Comp.Act, § 2, subd. 7), for the reason that Field, after finishing the work of the day, had left the premises or plant (section 2, subd. 4), and was out upon the public sidewalk. If he had been struck within the threshold, liability would be conceded. Because he was struck without, liability has failed.

"We think the line of division is drawn too narrowly and closely when circumstances of place are thus considered to the exclusion of all others. The quarrel outside of the mill was merely a continuation or extension of the quarrel begun within. Magid, pulled away from his enemy indoors, was waiting for his vengeance at the gate, and took it on the instant. The rule is well settled that an employee, even after closing time, is in the course

of employment until a suitable opportunity has been given to leave the place of work. * * * Here, almost in the very act of putting his foot without the mill, the employee is confronted by a danger engendered by his work within. The situation would be hardly different if a struggle, begun back of the threshold, had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers. Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one."

The state industrial board had allowed the claim, the appellate division dismissed it and this decision reversed the order of the supreme court and confirmed the original award.

Each of these New York cases refers to Rourke's case, 237 Mass. 360, 129 N.E. 603, 13 A.L.R. 546, wherein an employee was injured by an assault by a picket on a public street after he had left his place of employment for the day and was proceeding toward his boarding house. There the court ruled that the injury was not within the course of employment. The holding in Rourke's case, supra, is criticised in Horovitz on Workmen's Compensation, page 174. Compensation was denied under similar circumstances in the case of Enterprise Foundry Co. v. Industrial Accident Commission of California, 206 Cal. 562, 275 P. 432, which cites the Rourke's case, supra, and Lampert v. Siemons, supra.

A very recent (1952) publication, Larson's Workmen's Compensation Law, Vol. 1, pp. 446-7, section 29.21, in discussing cases of this nature says:

"The commonest examples of work connected assaults outside working hours are those growing out of strikes. Note that in these cases—whether you choose to call the claimant a scab or a loyal employee—it must be admitted that the claimant is assaulted solely because of the performance of his work. From the employer's point of view, if there ever was a time when an employee deserved compensation for his injuries, it is when the employee, at considerable personal risk, remains on the job to minimize the deterioration of plant and other loss being suffered by the employer."

The attitude of this Court as to the construction of the Workmen's Compensation Act is aptly stated in Hamilton Motor Co. v. Cooner, 254 Ala. 422, 47 So.2d 270, 274, where we said:

"This court has often pointed out that the Workmen's Compensation Act, being remedial in nature, should be given a liberal construction to accomplish its beneficent purposes. Sloss-Sheffield Steel & Iron Co. v. Nations, 236 Ala. 571, 183 So. 871, 119 A.L.R. 1403; Swift & Co. v. Rolling, 252 Ala. 536, 42 So.2d 6; Ex parte Terry, 211 Ala. 418, 100 So. 768. And we have further held that the act must be liberally construed and all reasonable doubt resolved in favor of the employee. National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734; Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626. Furthermore liberal statutory definitions of employer and employee control in incidents pertaining to workmen's compensation to the extent that they modify the common law governing master and servant. Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276."

In the instant case if Holderfield had been assaulted while on the premises of the defendant liability would have been conceded. The conclusions of which appellant complains are as follows:

"The court finds that from the threats and pattern of behavior of said striking employees directed at plaintiff and their giving chase to plaintiff from the immediate vicinity of the entrance to the defendant's terminal constituted assault on plaintiff while said plaintiff was in and about defendant's premises and said assault was a continuing act until said assault culminated in the bat-

tery on plaintiff which caused his injury and disability," and

"The court further finds that said accident arose out of and in the course of plaintiff's said employment by defendant and that said injuries and disability were the direct and proximate result of said accident."

We think the above finding is a reasonable view of the evidence in this case and that a liberal construction of the phrase of the Workmen's Compensation Act "in the course of his employment" justifies this Court in not disturbing the findings and judgment of the lower court.

The appellee has three cross-assignments of error: (1) the refusal of the court to include interest in the amount of appellee's judgment, (2) the allowance by the court of a set-off of $357 paid by appellant to appellee after the accident and (3) the allowance by the court of the amount of $420.25 claimed by way of set-off and recoupment.

The payment of interest from any given date is not referred to in the Act, nor do we find any Alabama cases under the Act dealing with that subject. This Court, in considering a similar claim under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., cited the State Employers' Liability Act and declined to allow interest before judgment. Mobile and Ohio R. Co. v. Williams, 219 Ala. 238, 248, 121 So. 722, 731. We do not think Title 9, § 62, Code 1940, or Roe v. Brown, 249 Ala. 425, 31 So.2d 599, are applicable here.

With reference to the second and third cross-assignments, we quote the following from the testimony of the plaintiff, Mr. Holderfield, which amply supports the finding of the court in those particulars:

"Q. With reference to that, you do owe them four hundred and twenty-five dollars that they claim, don't you? A. That they claim, yes sir.

"Q. And they did pay you the three hundred and fifty-seven dollars that you didn't work for, whether you are entitled to it or whether they just gave it to you or whether it was salary or what it was, they paid you the three hundred and fifty-seven dollars and you actually did no work for it, did you? A. Fifty-one dollars a week, sir, I don't remember, I don't know exactly, I never had counted it up.

"The Court. Was any of that included in this four hundred and twenty-five dollars?

"The witness. No, sir, that was not included.

"Q. That four hundred and twenty-five dollars and some odd cents, that was money that they guaranteed at the bank and which you didn't pay back? A. Yes, sir."

We think a reasonable view of the evidence supports the conclusion reached by the trial court, and the decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY and GOODWYN, JJ., concur.

LAWSON, J., dissents.