[Civ. No. 50181. Second Dist., Div. Two. June 15, 1977.]

WANDA B. RIVERA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ROHR-PLESSEY CORPORATION, Respondents.

COUNSEL

Simon, McKinsey & Miller and David L. Sandor for Petitioner.

James J. Wood for Respondents.

OPINION

**COMPTON, J.**—Claimant, the widow of the deceased employee, petitions for review of an order denying workers' compensation benefits on the ground that the deceased was coming to work within the meaning of the "going and coming rule" when he was killed.

Just before his death, decedent was a millwright employed by respondent Rohr-Plessey Corporation. He belonged to Local No. 1607 of the Los Angeles Millwrights Union. A labor dispute occurred and on September 3, 1975, respondent's employees who were members of the electrical workers union walked off the job, and other members of different crafts unions also walked out in sympathy with the electrical workers strike. As a result of the strike and walkouts, decedent left work early.

During that evening decedent attempted, apparently without success, to determine whether he would be permitted by his union to work the next day. The following morning union representatives were at the job site at 6 a.m. for the purpose of providing information as to the status of the dispute. They posted themselves near a catering truck which was parked at the Bandini Avenue gate to respondent's premises.

A number of workers had congregated around the truck as well as up and down both sides of Bandini. Most of the members of decedent's local, the millwright union, were reporting to Rose and Dillard, their representatives, near the catering truck in order to find out whether they should report for work. They were all parking their cars and trucks on Bandini; going up to Rose and Dillard to get information; and then after being told to go to work they would get their vehicles, drive them into respondent's parking lot on the premises, and report to work.

When decedent arrived at the Bandini gate in his truck at his usual time to report for work (about 7 a.m.) he also parked his truck on Bandini Avenue, on the south side, and then crossed to the north side and spoke to Rose near the catering truck to find out if he should report for work. The conversation took place about 7:15 a.m., and starting time on the job was 7 a.m. Thereafter while recrossing Bandini Avenue to get his truck and park it in respondent's parking lot in order to report for work, decedent was struck by an automobile and died shortly thereafter.

■ At issue is the application of the "going and coming rule" which precludes compensation for injuries suffered during the course of a local commute to a fixed place of business at fixed hours in the absence of certain exceptional circumstances. Normally that rule bars recoveries for injuries suffered before the employee actually enters upon the employer's premises (which premises include an employer-furnished parking lot). Once such entry exists, it is not a bar to recovery that the injury occurs on public property.

In *Lewis* v. *Workers' Comp. Appeals Bd.,* 15 Cal.3d 559 [125 Cal.Rptr. 353, 542 P.2d 225], a case relied on by claimant, a county employee parked on a lot leased for the exclusive benefit of county employees and then slipped, fell and was injured on the public street while walking to her office building from the parking lot. The award in that case was sustained on the basis that travel in a direct route from the lot to the office building where claimant worked fell within that " 'reasonable

margin of time and space necessary to be used in passing to and from the place where the work is to be done.' " (15 Cal.3d 559, at p. 563.)

It was there held that "[o]nce the employee steps into the premises of the employer, be it parking lot, plant or office, the *relationship of the employer and employee begins,* and it is not terminated because the employee, in order directly to reach his alloted post, may cross public property." (Italics added.) (*Lewis, supra,* at p. 563.)

An extension of that principle is found in *Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8 [118 P.2d 809], a case in which the California Supreme Court first spelled out a "special risk" exception to the "going and coming rule."

In that case a janitor employed on a steamship, in order to reach the vessel on which he worked, had to walk across a public bulkhead which constituted the only means of access to the Embarcadero in San Francisco. While on that bulkhead he was struck by a vehicle owned by his employer and operated by another employee of his employer. The Supreme Court held that recovery was proper because the employee was peculiarly subject to a risk of being run over on the bulkhead. The necessity that he be on the bulkhead in order to go to work every day caused there to be a greater probability of his being injured there than the probability that a member of the general public would be so injured. Following the *Freire* case, the California Supreme Court also permitted recovery under the special risk exception in *Greydanus* v. *Industrial Acc. Com.,* 63 Cal.2d 490 [47 Cal.Rptr. 384, 407 P.2d 296], in which a dairy employee was required every day as part of his job to turn left off a highway into his employer's dairy farm in order to get to his work in the milking barn, and was injured while making that turn.

In each of the foregoing cases the risk to which the employee was subjected was related to and grew out of the location of the employer's premises and conditions over which the employer exercised some control.

Those cases are to be contrasted with *General Ins. Co.* v. *Workers' Comp. Appeals Bd.,* 16 Cal.3d 595 [128 Cal.Rptr. 417, 546 P.2d 1361]. In that case the claimant was struck and killed by a passing automobile while alighting from his car on a public street in front of the employer's premises. No employee parking was furnished and the employees *normally* parked on nearby public streets. Under those circumstances the

court held that although the causal connection with employment existed (since claimant would not have been there but for his employment) the special risk exception was not applicable because he had parked on a public street at a time and in a location where parking is available to the general public, so that his risk did not exceed that of a member of the public.

The "going and coming rule" together with its extensions and exceptions, of course, grew out of the basic concept underlying workers' compensation, i.e., compensation for injury or death "arising out of and in the course of employment." (Lab. Code, § 3600.)

The court in *Lewis* v. *Workers' Comp. Appeals Bd., supra,* cast this issue in terms of the day-to-day commencement of the employer-employee relationship. We are here asked to extend this relationship to an isolated incident on a public street at a time when the employee was engaged in an activity over which the employer had no control and which was occasioned by the employee's attempt to comply with the directions of his union rather than those of the employer. Had the union directed otherwise, the decedent would have been, at the time of his fatal injury, on his way to do something other than report for work. In that situation the injury would have been the result of "nonemployment" rather than "employment" as the code requires.

The fact that the union representative directed decedent to report for work does not change the picture. An employer's liability under the workers' compensation law cannot turn on the directions or policies of the employee's union.

Suppose for example the union representative instead of going to the job site had held himself available to answer questions at the union office or at a location some distance removed from the job site and decedent had suffered the same fate at that other location. Certainly under such circumstances it could not be seriously argued that the employer's liability should be expanded to embrace that occurrence.

The fundamental controlling fact is that at the time the decedent suffered his injury the employer-employee relationship had not commenced. He had neither set foot on the employer's premises nor reported for work. In fact decedent had prematurely terminated that relationship on the previous day and did not intend to reinstitute it until told to do so by his union.

The decedent's intent, at the time he parked his car and crossed the street, was to work or not work depending on his own decision and that of his union—a decision which was unrelated to any conduct on the part of the employer (compare *Lewis, supra*—location of the employee parking lot) or to the particular location of the employer's premises (compare *Freire* and *Greydanus, supra*).

The existence of a labor dispute and its attendant confusion at the job site did not create the type of "special risk" that would justify yet another exception to the "going and coming rule." The mandate of liberal application of the workers' compensation law (Lab. Code, § 3202) does not require such an exception. That the legislative intent is to the contrary is suggested by the fact that unemployment compensation, another benefit for employees which is liberally applied, is specifically withheld when an employee leaves his job because of a trade dispute. (Unemp. Ins. Code, § 1262.)

The decision of the Workers' Compensation Appeals Board is affirmed.

Beach, J. concurred.

**FLEMING, Acting P. J.,** Dissenting.—The critical issue here is whether at the time of the accident decedent was engaged in his employer's business within the meaning of the Workers' Compensation Act and therefore entitled to death benefits. Proper resolution of this issue requires a fuller statement of fact than that given in the majority opinion.

Decedent, a member of the millwright union, was engaged with members of other craft unions in the construction of a federal post office building in Bell. The job site, bounded on the south by Bandini Avenue and on the east by Eastern Avenue, had entrances on both streets, and as far as the record shows the job site was coterminous with the owner's premises. On September 3 a labor dispute erupted when members of the electrical workers union walked off the job, and members of other unions, not knowing whether their unions would join the walkout, stopped working. That evening decedent learned that his union and

other craft unions would not join the strike but would cooperate with employers in advising employees to return to their jobs. To bring about resumption of work two actions were taken early the next morning: (1) the employer[1] posted a sign at the Bandini Avenue entrance directing employees of the electrical contractor to use the Eastern Avenue entrance and directing employees of all other contractors to use the Bandini entrance, thereby facilitating access to the job site that did not require workers to cross a picket line; (2) business agents for the millwright union went to the job site before the start of work to reassure members that their union was not on strike.

On the morning of September 4 men were milling around the sidewalks on both sides of Bandini Avenue, a few had entered the premises, and a confused situation existed at the Bandini entrance. Decedent arrived for work, parked his automobile on the far side of Bandini Avenue, and walked across the street to the Bandini entrance, where he conferred with union business agents and where, presumably, he read the employer's sign designating the particular entrance he should use. While recrossing the street to retrieve his automobile to drive into the Bandini entrance he was struck by a passing vehicle.

From these facts I conclude, (1) prior to the accident decedent had in fact arrived at his employer's premises for purposes of the Workers' Compensation Act; (2) he was engaged in carrying out the employer's instructions at the time he was killed; (3) his departure from his usual routine was justifiable, and he did not lose the protection of worker's compensation.

1. Decedent had in substance reached the employer's premises when he went to the entrance gate and onto the sidewalk adjoining the entrance to the federal post office then under construction. (Cf. *Schwartz v. Helms Bakery Limited* (1967) 67 Cal.2d 232, 239-240 [60 Cal.Rptr. 510, 430 P.2d 68].) So far as appears, the post office premises were coterminous with the job site, and for purposes of worker's compensation it may be said that decedent had arrived at his employer's premises once he reached the entrance gate. The principle is set out in *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 491 [47 Cal.Rptr. 384, 407

---

[1]For purposes here employer includes both the general contractor and the subcontractor by whom decedent was employed. Both were working toward a common goal of resumption of employment at the job site. In this endeavor they functioned as agents of one another and accordingly the acts of each are properly identifiable as those of the employer.

P.2d 296], where an employee making a left turn on the highway in order to enter his employer's driveway was struck on the highway by another vehicle before he reached the driveway. In upholding compensation coverage the court found the employee "had entered the necessary means of access to the employer's premises and, thus, had come within the field of special risk created by the employment." So here. The employee had in fact arrived at the necessary means of access to his employer's premises. His later temporary departure to retrieve his automobile compares to that in *Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8 [118 P.2d 809], where the employee left the employer's premises to reach his place of work in another area, and to that in *Lewis* v. *Workers' Comp. Appeals Bd.* (1975) 15 Cal.3d 559 [125 Cal.Rptr. 353, 542 P.2d 225], where the employee first entered the employer's parking lot and was then injured on a public street while walking to her employer's office.

2. Even if it be assumed that decedent had not technically reached the employer's premises, it is clear that at the time of the accident he was engaged in following the employer's special orders. These came about as a result of the employer's attempt to minimize the effect of the electricians' walkout by promulgating special instructions governing access to the premises by various classes of employees in order to avoid the handicap of a picket line at the main entrance to the job site. Reading these special instructions became part of the employee's job, and in order to go to work that morning decedent needed to learn and follow his employer's orders about method of ingress. In a real sense, therefore, decedent was engaged in his employer's business while obtaining instructions about ingress, either directly through reading the employer's sign and/or indirectly through assurances from his union business agents. Because he was engaged on his employer's business in this activity, decedent is entitled to the protection of worker's compensation.

3. Finally, regardless of the employee's technical entry upon the employer's premises and regardless of special instructions posted by the employer, decedent was entitled to depart from ordinary routine in exercising precautions for his own safety. An inherent condition of any employment is that an employee may take reasonable steps to guard against the threat of unusual dangers such as fire, physical hazard, and civil disorder. The sight of a milling crowd at the entrance to premises in which a labor dispute is pending justifies an employee in approaching the area cautiously in order to explore the feasibility of safely reaching

his place of employment. If in the course of this reconnoitre he is injured, even by an agency not connected with the danger that originally inspired his caution, he has, under the doctrine of *Greydanus, supra,* "come within the field of special risk created by the employment." As pointed out by Traynor, J., in *Freire, supra,* "[t]he facts that an accident happens upon a public road and that the danger is one to which the general public is likewise exposed" are not controlling. For example, if in a labor dispute an employee had been beaten up or shot on the highway while seeking access to his employer's premises in order to go to work, he would be covered by worker's compensation. (1 Larson, Workmen's Compensation Law (1972) § 29.21; *Baggett Transp. Co.* v. *Holderfield* (1953) 260 Ala. 56 [68 So.2d 21]; *Meo* v. *Commercial Can Corp.* (1963) 80 N.J.Super. 58 [192 A.2d 854]; *Blue Diamond Coal Company* v. *Creech* (Ky. 1967) 411 S.W.2d 331.) The same would be true if an employee had injured himself using a public alley because access to his usual point of entry to the employer's premises was blocked. (*Flanagan* v. *Ward Leonard Electric Company* (1949) 274 App.Div. 1081 [85 N.Y.S.2d 649]; *Cossari* v. *L. Stein Co.* (1948) 1 N.J.Super. 39 [62 A.2d 143]; *Leatham* v. *Thurston & Braidich* (1942) 264 App.Div. 449 [35 N.Y.S.2d 887], affd. 289 N.Y. 804 [47 N.E.2d 51]; *Barfield* v. *Giant Food, Inc.* (1973) 16 Md.App. 726 [299 A.2d 523].) The identical principle of causation applies here. Had there been no labor dispute decedent would have driven onto the premises as usual, and would never have become a pedestrian casualty on Bandini Avenue.

In a broad sense the three foregoing arguments are one, for each leads to the conclusion that decedent's departure from his usual routine—one that led to his becoming a pedestrian on Bandini Avenue—came about as a result of his employer's business and was undertaken in his employer's interest. While occupied in this activity he was engaged in his employment and came under the protection of worker's compensation.

I would annul the judgment and remand the cause to the board with directions to enter a finding that Rivera's death was caused by an injury arising out and occurring in the course of his employment.

Petitioner's application for a hearing by the Supreme Court was denied August 19, 1977. Sullivan, J.,* participated therein. Tobriner, J., Mosk, J., and Sullivan, J.,* were of the opinion that the application should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.