267 N.J. Super. 395 (1993)
631 A.2d 978
NEIL CAIRNS, PETITIONER-APPELLANT,
v.
CITY OF EAST ORANGE, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1993.
Decided September 29, 1993.
*396 Before Judges SHEBELL, LONG and LANDAU.
Barry H. Evenchick, argued the cause for appellant (of counsel and on the brief).
Rashidah N. Hasan of the firm of Lofton & Wolfe, argued the cause for respondent (of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
This case involves an application of the Workers' Compensation Act (Act) which is one of first impression in New Jersey. Neil Cairns (petitioner) appeals from the dismissal on the merits of his claim petition by Stanley Levine, Supervising Judge of the Division of Workers' Compensation. The petitioner alleged that he sustained emotional distress and mental suffering as a result of receiving a notice of layoff on August 23, 1989, after thirty-three years of continuous employment with the City of East Orange (respondent). In his oral decision of September 22, 1992, Judge Levine concluded that layoff notices are inherent to employment and petitioner's psychiatric injuries could not be regarded as "work-related" or "arising out of employment."
*397 A detailed recitation of the facts is presented because of the unique nature of the case. In 1988, at age 61, petitioner had been a civil service employee of respondent for thirty-three years. At the time his claim petition was filed, he was Superintendent of Public Buildings and Grounds earning approximately $56,000 per year. He supervised about 20 to 30 people.
On or about February 1, 1988, respondent's office of personnel processed and sent out approximately 700 "general layoff notices" to all employees of East Orange, except for police, fire, and certain library workers. Respondent's personnel manager testified that, as required by state law, these general notices included a 45-day layoff notification and were sent because of "fiscal constraints" to all employees within an organizational unit that may be affected by a specific layoff notice at a later time. Petitioner confirmed that the general notice of layoff did not cause him any significant concern because, as a city employee, he recognized it as a notice of potential layoff and he had received several such notifications in the past.
While at work on February 11, 1988, petitioner was hand-delivered a "specific notice of layoff," which informed him that he was being laid off his job on March 31, 1988. It appears that his department had been abolished shortly before he received this layoff notice, and that approximately twenty such notices were distributed to members of his department. The personnel manager doubted whether any "specific notice of layoff" had been sent to employees who had twenty or more years of service. Petitioner was probably one of the ten longest serving employees of respondent at the time he received the specific notice of layoff.
Petitioner asserted that he reacted to the specific notice of layoff with shock and disbelief. He felt there had been some mistake because he had the most seniority of anyone in the department and he thought that the last to be hired was to be the first fired. Upon receipt of this notice, he felt ill and went to see the respondent's authorized doctor within a couple of days. Judge *398 Levine characterized petitioner to be "the most impressively credible witness to ever have appeared before me."
Petitioner was not satisfied with the first doctor so he went to see and was treated by the head psychiatrist at East Orange General Hospital. Along with his shock, anger, and disbelief, petitioner experienced insomnia, loss of appetite (resulting in a weight loss of fifty pounds), inability to concentrate, change in his temperament, and negative effects on his marital relationship. At times, petitioner and his wife were compelled to sleep in different beds because of petitioner's insomnia. Petitioner's wife testified that petitioner no longer helped with chores around the house and had lost interest in his children and grandchildren. Petitioner had never before experienced any of the above mentioned problems nor sought any form of psychiatric counselling.
After the initial consultation, petitioner was treated by the psychiatrist every two weeks. The psychiatrist diagnosed a post traumatic stress syndrome and major depressive illness related to the anger that petitioner had about being laid off or the potential of being laid off. The psychiatrist advised petitioner to take time off from work. He prescribed an anti-anxiety drug and a sedative.
While the petitioner was not working because of his medical problems, he received a letter dated March 15, 1989, from the New Jersey Department of Personnel advising him as to "demotional or bumping rights" arising from his seniority. Respondent twice extended the date of the layoff, for another forty-five days each time. The layoff notice was thereafter rescinded and petitioner returned to work on or about August 15, 1988, against the instructions of his psychiatrist. As of August 15th, 1988, petitioner had been out of work for a total of six months.
Petitioner's treatment continued after he returned to work, but his depression worsened and the doctor again recommended that he stop work. Petitioner left his job at the end of July, 1991. He officially retired in April, 1992. Petitioner testified that he would not have retired at that date, but for the medical problems he was having at the time. Judge Levine found that petitioner's receipt *399 of the specific notice of the layoff was the "causal triggering mechanism for [petitioner]'s medical problem and disability."
Judge Levine correctly stated that the central issue is whether a layoff notice can be considered "work-related" or "arising out of employment" for purposes of workers' compensation. The Act requires an employer to pay an employee compensation for personal injuries, occupational disease, or death, "arising out of and in the course of his employment." N.J.S.A. 34:15-30 and N.J.S.A. 34:15-7. Thus, whether the claim is considered one for accidental injury or occupational disease is of no consequence here as the Act only requires payment of benefits if the injury "arises out of employment." This phrase is not defined in the Act, however, the following appears to represent a satisfactory outline of its perimeters.
An accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. Moreover, a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment, owing to the special nature of the employment. [Furda v. Scannell China Co., 17 N.J. Super. 339, 347, 86 A.2d 39 (Law Div. 1952)].
Whether a layoff notice would satisfy the requirements of the definition of "arising out of employment," most likely depends on underlying policy considerations rather than the clear language of the Act. See Williams v. Western Electric Co., 178 N.J. Super. 571, 588, 429 A.2d 1063 (App.Div. 1981). No New Jersey case law is directly on point. However, two New Jersey cases involving fear of loss of employment were discussed by Judge Levine and are relevant.
In Walck v. Johns-Manville Products Corp., 56 N.J. 533, 267 A.2d 508 (1970), compensation was denied an employee who suffered a fatal heart attack. It was alleged in part that the attack was caused by decedent's feeling of insecurity about the job and fear that he might lose his job. Id. at 557, 267 A.2d 508. Our Supreme Court held:

*400 [I]f the nature of the employee is such that he is a worrier, the mere fact that he becomes unnecessarily tense and nervous as to whether he is going to keep or lose his job, without more, would not make a heart attack compensable, even if the attack did result from that worry.... [Ibid.]
The petitioner in Walck had a subjective fear about some possible future loss of his job, whereas the petitioner in the present case actually received a layoff notice thereby precipitating his concern.
In Walck, the applicable principle under the Act was stated as follows:
Put in conventional terms, the heart attack, to be compensable, must arise out of the employment. That is, must be due in some realistic sense and material degree to a risk reasonably incidental to the employment; the attack must issue from or be contributed to by conditions which bear some essential relation to the work or its nature. [56 N.J. at 556, 267 A.2d 508].
Our Supreme Court in Walck espoused a policy against making employers insurers of all risks which might arguably be related to the employment setting. Regarding fear of job loss, the Court stated:
"[t]hat kind of anxiety or tension cannot be considered a risk arising out of the employer's work. If worry, about job security alone, which produces a heart seizure would establish compensability, the employer would become an insurer against such attacks." Id. at 557, 267 A.2d 508.
In Goyden v. State Judiciary, 256 N.J. Super. 438, 607 A.2d 651 (App.Div. 1991), aff'd o.b., 128 N.J. 54, 607 A.2d 622 (1992), the petitioner suffered severe depression resulting from the stress he felt on the job and from fear that his superiors were taking steps to remove him from his job. Even though the judge of compensation found petitioner to be 100% disabled because of the depression attributable to his employment, we reversed because the plaintiff's stress was deemed to be "subjective" and did not satisfy the requirement that there must be "objective" evidence of working conditions sufficiently stressful to contribute to the development of a mental disorder. Id. at 447, 607 A.2d 651.
In Walck and Goyden, both of which were presented as occupational disease claims, we sought to some extent to determine whether the precipitating events were "peculiar" to the workplace, Goyden, 256 N.J. Super. at 458, 607 A.2d 651, or held some *401 "essential relation to the work or its nature." Walck, 56 N.J. at 556, 267 A.2d 508. In applying those tests here, we hold that receipt of a layoff notice is neither peculiar to the employment, nor essentially related to the work or nature of the work. Rather, layoff decisions and notices related to terminations are common to all employment. In the present economic climate, such layoffs have become a necessary part of doing business. As Judge Levine concluded, unemployment is not a risk arising out of employment, but a risk arising out of the economy.
We recognize that drastic personnel action may in certain circumstances result in adverse mental and even physical consequences. Unfortunately, it is not uncommon for businesses, even large enterprises, to cut back their workforce or to close their doors and displace an entire workforce. The resulting disability to a severed employee in some cases may be immediate, while in other instances it may occur slowly and progressively depending on personal factors such as inability of the layed-off worker to obtain work. It would be unusual for there not to be some emotional response by an employee to drastic personnel action.
Nonetheless, in the absence of evidence of a clear legislative intent to require payment of workers' compensation benefits for disability caused by varying personalized responses of employees to bona fide personnel decisions that alter an employee's work status, we are constrained to conclude that the burden of providing compensation to such employees may not be imposed upon an employer. Even where instances of such harm may be predictable, the stress or trauma caused by such personnel decisions is an ordinary part of life and is not so peculiar to the specific employment as to be deemed to arise out of the employment.
The handling of similar cases in other jurisdictions is illuminating and demonstrates that the issue may turn more on a policy decision than a technical interpretation of the statutory language involved. By a vote of 4-3, a Massachusetts appellate court affirmed an award for an employee who suffered an emotional breakdown after being informed by her employer that she was *402 going to be transferred to another department. Kelly's Case, 17 Mass. App. Ct. 727, 462 N.E.2d 348 (1984). As in the present case, Ms. Kelly had been employed for a considerable amount of time (twenty-two years) and suffered a severe depression resulting from a single incident of being informed of her layoff. Id. 462 N.E.2d at 349. The Massachusetts court held the oral notice of petitioner's layoff constituted a work-related incident. See id. at 351. However, the court noted that it found the decision troubling, and questioned whether injuries like the one suffered by Ms. Kelly should be compensated under workers' compensation or under programs such as unemployment compensation or social security disability. Id. at 352.
One year after the Kelly decision, the Massachusetts legislature amended the state workers' compensation statute to read: "No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter." Mass. Gen. Laws Ann. ch. 152 § 1 (West 1993).
In a contrary holding, by a 5-3 decision, the Mississippi Supreme Court denied compensation to an employee who had a nervous breakdown after he was informed that he was being laid off. Smith & Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985). The court asserted that prior case law required a claimant seeking workers' compensation benefits for mental injury to prove the injury was directly related to some "untoward event, unusual occurrence, accident or injury incident to ... employment." Id. at 426 (quoting Johnson v. Gulfport Laundry Cleaning Co., 249 Miss. 11, 162 So.2d 859, 862 (1964)). Smith, a civil engineer, surveyor and draftsman was informed of his layoff while at work and suffered an immediate disabling reaction. Id. at 427. The Smith court held that layoffs are "unfortunate but not unusual events" and "cannot be characterized as untoward or unusual occurrences." Id. at 426.
*403 The Smith dissent found that the plaintiff's disability did arise "out of and in the course of his employment" id. at 432, and that the layoff was an "untoward event, unusual occurrence or injury incident...." Id. at 428. The dissent argued that even though an employer has the right to fire or layoff employees, this right is no different than an employer's right to use machinery in the workplace and since injuries caused by machinery are compensable so should those caused by lay-off or termination notices. Id. at 428-429.
The Supreme Court of Wisconsin, in denying compensation to an employee, held that "mental injury non-traumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience." School Dist. # 1, Village of Brown Deer v. Department of Industry Labor & Human Relations, 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974). Petitioner was a guidance counselor who suffered an acute anxiety reaction when she discovered that her students had recommended her removal from the staff. Id. 215 N.W.2d at 374. The court determined that the plaintiff's emotional stress was "no greater than the many differences and irritations to which all employees are subjected and is not an accident compensable under Workmen's Compensation." Id. at 377.
The California courts first confronted this issue in 1983. An intermediate court of appeals held that "[f]or an injury to occur in a job related manner, the employee must be engaged in work he was hired to perform and the injury must occur within the period of employment and while the employee was doing something necessarily incident thereto." Georgia-Pacific Corp. v. Workers' Compensation Appeals Bd., 144 Cal. App.3d 72, 82, 192 Cal. Rptr. 643 (1983) (citing Rivera v. Workers' Compensation Appeals Bd., 70 Cal. App.3d 705, 139 Cal. Rptr. 67 (1977)). There petitioner had suffered severe depression when told he must work longer hours or be fired. Georgia-Pacific, supra, 144 Cal. App.3d at 77, 192 Cal. Rptr. 643. The employer had argued that the petitioner *404 suffered injury because of employment termination. Id. at 74. This argument was made because prior case law held that injuries resulting from termination are not compensable under California's Workers' Compensation Act. See Rivera, supra, 70 Cal. App.3d 705, 139 Cal. Rptr. 67.
In 1990, California case law apparently was changed by the holding in a civil action that "disabling injuries, whether physical or mental, arising from termination of employment are generally within the coverage of workers' compensation and subject to the exclusive remedy provisions...." Shoemaker v. Myers, 52 Cal.3d 1, 276 Cal. Rptr. 303, 305, 801 P.2d 1054, 1056 (1990). Shoemaker rejected the Georgia-Pacific holdings and concluded that "both the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment." Shoemaker, supra, 276 Cal. Rptr. at 314, 801 P.2d at 1065.
Shoemaker had been an investigator for the Department of Health Services for nine years and had an exemplary record in civil services for twenty-two years up to the time of his termination. Id. 276 Cal. Rptr. at 305, 801 P.2d at 1056. He alleged that his termination was in retaliation for an investigation he had conducted where he reported possible illegal practices of his supervisors. Id. 276 Cal. Rptr. at 307, 801 P.2d at 1058. He brought suit for wrongful termination, breach of contract and the implied covenant of good faith and fair dealing, civil rights violations, intentional infliction of emotional distress, and other related causes of action. Ibid. He alleged physical illness and disability resulting from the acts of the defendants. Ibid. Defendants successfully resisted part of the civil action involving the intentional infliction of emotional distress cause of action on the grounds that these injury claims were barred by the exclusive remedy provisions of the workers' compensation law. Id. 276 Cal. Rptr. at 318, 801 P.2d at 1069.
An Illinois appellate court has held that "[t]ransfers, demotions, new responsibilities, and layoffs or terminations are normal and *405 expected conditions of employment life, along with accompanying insecurity and worry." Esco Corp. v. Industrial Commission, 169 Ill. App.3d 376, 119 Ill.Dec. 833, 837, 523 N.E.2d 589, 593 (1988). The court reversed a grant of workers' compensation benefits to an employee who suffered a myocardial infarction five months after he was discharged from employment. Id. 119 Ill.Dec. at 838, 523 N.E.2d at 594. The appeals court held that a subjective reaction to normal working conditions is not compensable. Id. 119 Ill.Dec. at 837, 523 N.E.2d at 593.
The Commonwealth Court of Pennsylvania also concluded that a bookkeeper who suffered an anxiety reaction when she learned she was being laid off was subjected only to a normal working condition and, therefore, her injury could not be considered to "arise in the course of employment or be related thereto, ...." Kemp v. Workmen's Compensation Appeals Board, 121 Pa. Cmwlth. 23, 549 A.2d 1365, 1367 (1988), cert. denied, 523 Pa. 652, 567 A.2d 655 (1989); See also Mele v. Workmen's Compensation Appeal Board (Uniontown Hospital), 624 A.2d 738 (Pa. Commw. Ct. 1983) (notification of elimination of job positions held "normal" part of work conditions and not compensable).
In Murphy v. Industrial Comm'n of Arizona, 160 Ariz. 482, 774 P.2d 221 (1989), an employee fainted while at work after being informed of a transfer and a cut in pay. Id. 774 P.2d at 222. When he fainted, he struck his head on the tile floor and went into a coma. Ibid. The Supreme Court held that the employee's injury resulted from work-related stress and "arose out" of employment. Id. at 224. In our view, compensability could also have been found because the severe injury occurred as a result of the fall on to the hard tile floor at work. See George v. Great Eastern Food Products, Inc., 44 N.J. 44, 207 A.2d 161 (1965).
In summary, we conclude that the psychiatric injuries resulting from this petitioner's receipt of a lay-off notice are not compensable, notwithstanding petitioner's apparent ability to satisfy the threshold requirement of demonstrable "objective medical evidence" for psychiatric injuries. See Saunderlin v. E.I. Du *406 Pont Co., 102 N.J. 402, 508 A.2d 1095 (1986). Notification of petitioner's proposed layoff was not peculiar to the employment and did not arise out of the employment. To permit recovery in these circumstances would place the employer in the position of being an insurer of the general health and welfare of the employee and unduly subject all employers to innumerable potential claims.
Affirmed.