721 A.2d 29 (1998)
317 N.J. Super. 41
Robert KLEIN, Petitioner-Respondent,
v.
The NEW YORK TIMES COMPANY, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1998.
Decided December 15, 1998.
*30 Michael J. Greenwood, Newark, for respondent-appellant (Carpenter, Bennett and Morrissey, attorneys; Mr. Greenwood, of counsel; Joel L. Botwick, on the brief).
Bonnie Kass-Viola, Toms River, for petitioner-respondent.
Before Judges KEEFE, EICHEN, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
In this workers' compensation case, the employee, Robert Klein, enraged by his supervisor's criticism, smashed his fist against an electrical box, breaking bones in his hand. The judge of compensation held that the employee's self-inflicted injury was compensable because he acted impulsively while at work and did not intend to harm himself. Although we have no quarrel with the judge's factual determinations, we nonetheless reverse because he failed to apply the correct principles of law.
Under the Workers' Compensation Act an award requires proof of an "accident" and proof that the accident arose "out of" as well as "in the course of" employment. An accident does not include an intentional act of violence to oneself that causes a reasonably expected injury. Although Klein was injured in the course of his employment, his reasonably anticipated and violently self-inflicted injury was not the result of an accident. Furthermore, the injury did not arise "out of" the employment because it resulted from Klein's personal proclivities and his unreasonable reaction to a supervisor's commonplace personnel action.
On the evening of November 16, 1994, Klein was at a plant owned by his employer, The New York Times Company, preparing a collating machine for operation, when he was called to the office by his supervisor who criticized his job performance. He was told that he was not setting up the machine properly and that if he did not "bring his performance up to standard level ... he was going to be removed from the position." Klein, who had previously demonstrated his proclivity for reacting emotionally to criticism of his job performance, became agitated, screamed, and ran from the room. After complaining briefly to a union representative, he walked toward the locker rooms, felt overwhelmed by anger, and intentionally punched an electrical box, breaking its Plexiglas cover and the fourth and fifth metacarpal bones of his right hand.
There can be no recovery under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142, without proof of an accident. N.J.S.A. 34:15-1; N.J.S.A. 34:15-7. Although the concept of "accident" is not defined by the Act, its meaning in this context has been settled in general terms by our courts. "`[A]ccident' in the legislative sense is an `unlooked for mishap or an untoward event which is not expected or designed....'" Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 134, 141 A.2d 761 (1958). The concept was framed somewhat differently in George v. Great Eastern Food Products, Inc., 44 N.J. 44, 207 A.2d 161 (1965), where the Court said that an occurrence is an accident under the Act "if either the circumstance causing the injury or the result on the employee's person was unlooked for, regardless of whether the inception or the underlying reason for the circumstance or result was personal or work connected." Id. at 47, 207 A.2d 161.
Here, the circumstance causing the injury, Klein's impulsive but violent and intentional punch of the electrical box, cannot be described as an unlooked for or unexpected occurrence since it resulted from his willful *31 action. And, although Klein may not have intended to harm himself, as found by the judge of compensation, the resulting injury cannot be fairly described as "unlooked for." In that regard, we note that the George Court used the phrase "unlooked for" as meaning "unexpected" and not as referring to the employee's lack of specific intent to cause self-injury. Thus, in reaching a conclusion favorable to the employee who had injured his head in a fall, caused by dizziness resulting from his cardiovascular illness, the Court said, "Here ... `both the circumstance causing the injury (the striking of the floor) and the consequence upon the employee's person were unexpected.'" Id. at 48, 207 A.2d 161 (emphasis added). It is self-evident that a person who forcefully strikes a hard object with the knuckles of his fist should expect resulting injury to his hand.
No court of this State has permitted a workers' compensation recovery in comparable circumstances. Perhaps, the closest case is Secor v. Penn Service Garage, 19 N.J. 315, 117 A.2d 12 (1955) (4-3 decision), in which a garage attendant, whose pants had just been splashed with gasoline while he was filling a customer's gas tank, and whose supervisor had suggested that he immediately change his pants, lit a match and instantaneously was in flames. The trier of fact found that Secor did not intend to ignite his clothing, but he did not determine whether Secor was about to light a cigarette, or was intending to prove the absence of a need for changing clothes, or "whether his act was an impulsive one designed to impress his employer with his lack of personal fear...." Id. at 317, 117 A.2d 12. After resolving that under the first two scenarios Secor was clearly entitled to compensation, id. at 323, 117 A.2d 12, the Court addressed the third scenario, finding it analogous to the "curiosity cases," decisions allowing recovery to employees injured during intentional but slight and casual departures from duty occasioned by ordinary curiosity.
More troublesome is the question presented by the assumption that Secor was not motivated by either of the aforestated purposes but simply lit the match in a spirit of "mock bravado." But even here, the compelling principles underlying the modern authorities, particularly the so-called "curiosity cases," lend adequate support for the compensation award to the employee.
[Id. at 324, 117 A.2d 12 (citation omitted).]
The "curiosity cases" do not provide adequate support to compensate Klein for his conduct. None involve, as does this case, an intentionally violent act that is a clear and substantial departure from the employee's assigned duties and causes an injury that should have been anticipated. Id. at 321-322, 117 A.2d 12.
The Secor Court emphasized, as a further reason supporting compensation, what it viewed as the minimal, momentary, and impulsive nature of the employee's deviation:
The evidence established that, in any event, Secor's deviation from the course of his ordinary work was not an intentional abandonment of his employment but simply a "momentary or impulsive act"it was not a "deliberate and conscious excursion".... An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof.
[19 N.J. at 324, 117 A.2d 12 (citation omitted).]
The Secor Court acknowledged that allowing compensation was "troublesome" if one assumed the employee was motivated by "mock bravado." The instant case goes well beyond bravado and an allowance of compensation would be more than troublesome. Although we accept the finding of the judge of compensation that the act was in some sense impulsive, we are nonetheless satisfied that it was also deliberate and conscious and cannot be fairly described as a minor deviation from work performance.
*32 Our conclusion, that an intentionally violent act that produces a reasonably expected self-injury is not an "accident" under the Workers' Compensation Act, accords with the weight of authority outside this State in cases involving the same circumstances. See, e.g., Glodo v. Industrial Comm'n, 191 Ariz. 259, 955 P.2d 15 (Ariz.Ct. App.1997); Wing v. Cornwall Indus., 418 A.2d 177 (Me.1980); McKay Dee Hosp. v. Industrial Comm., 598 P.2d 375 (Utah 1979). But see Cunningham v. Industrial Comm., 78 Ill.2d 256, 35 Ill.Dec. 772, 399 N.E.2d 1300 (Ill.1980).
Nor are we deterred from reaching our conclusion by the contrary view expressed by Professor Arthur Larson, a view noted and expressly rejected by the Glodo court with these observations:
Larson's analysis suffers from apparent confusion of that which is "intended" and that which is "expected." Thus, Larson maintains that "[t]o conclude that the claimant [in McKay ] expected or intended to break his hand, and slammed the door with his fist anyway, is preposterous. There is no place in compensation law for this artificial and fictitious kind of `intention.' " Larson, § 36.62 at 6-200.
The dispositive question in deciding whether something is an accident is whether the result is "unexpected" or "unforeseen," not whether the result was "unintended." Our cases do provide compensation for unexpected injuries that were the result of intentional acts. While neither the claimant in McKay nor the one in the present case may have intentionally set out to break his hand, it would be preposterous to say it was unanticipated that in punching a metal door, he could break his hand. If we were to adopt Larson's reliance on intent alone, compensation could be denied only when a claimant freely admitted to having intentionally punched a metal door in order to break his hand to spite his employer.
Larson's pronouncement that "there is no place in compensation law" for drawing such distinctions is simply wrong. Important social policy considerations support distinguishing the conduct in this case from compensable conduct under the statute. It would be patently unwise to reward individuals who engage in this type of self-injurious conduct. Furthermore, our legislature has indicated its desire that we draw such distinctions by specifically limiting compensable claims under A.R.S. section 23-1021(A) to those occurring "by accident."

[955 P.2d at 19.]
As noted at the beginning of this opinion, a related but independent reason for rejecting Klein's compensation claim is that the risk of injury did not arise out of his employment. The phrase "arising out of" employment refers to causation. Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288, 520 A.2d 1341 (1986). A risk arises out of the employment when it "might have been contemplated by a reasonable person when entering the employment, as incidental to [that employment.]" Id. at 289, 520 A.2d 1341 (internal quotation marks omitted). A risk will be considered incidental to the employment when it "belongs to or is connected with what a workman has to do in fulfilling his" duties. Ibid. (internal quotation marks omitted).
In Coleman, the Court identified three types of risks, those distinctly associated with the employment, such as machinery breaking, objects falling, or fingers getting caught in gears; those which are neutral, such as lightning striking an employee during work; and those which are personal to the employee. Id. at 291-92, 520 A.2d 1341. Compensation is only permitted with respect to the first two kinds of risk. Ibid. With respect to the third category of risk, the Court said:
Risks falling within this classification [(risks personal to the employee) ] do not bear a sufficient causative relationship to the employment to permit courts to say that they arise out of that employment.

[Id. at 292, 520 A.2d 1341.]
In other words, when the harm arises because of the "personal proclivities" of the employee, compensation must be denied even though the injury takes place during the employment. Ibid.
*33 Applying these principles, we have denied recovery to an employee who shot himself while playing Russian Roulette. Money v. Coin Depot Corp., 299 N.J.Super. 434, 691 A.2d 400 (App.Div.), certif. denied, 151 N.J. 71, 697 A.2d 544 (1997):
We conclude that the decedent's self-infliction of a fatal gunshot to his head resulted from a risk which was "personal" to him. The decedent's game of Russian Roulette was not a normal incident to his employment. It was a purely personal activity which was inimical to his employer's interests. It also was an activity which decedent ... could just as easily have engaged in while ... in his own automobile.... Moreover, even assuming decedent had no intention of taking his own life, his game of Russian Roulette was highly aberrant conduct which created a substantial risk of personal injury totally unrelated to the risks inherent in the normal conduct of the employer's business.

[Id. at 438, 691 A.2d 400.]
Klein was prone to react with intense emotion to criticism of his job performance. It was this personal proclivity that gave rise to his injury. Striking a hard object with his fist cannot be described as a normal incident of his employment. It was a purely personal act, however impulsive, adverse to his employer's interest, which created a serious risk of personal injury unconnected with the ordinary conduct of his work. Moreover, this case involves an injury resulting from an employee's fear that the criticism leveled against him by his supervisor suggested that he might lose his job. In Walck v. Johns-Manville Products Corp., 56 N.J. 533, 267 A.2d 508 (1970), the Court said "[t]hat kind of anxiety or tension cannot be considered a risk arising out of the employer's work." Id. at 557, 267 A.2d 508. And in Cairns v. City of East Orange, 267 N.J.Super. 395, 631 A.2d 978 (App.Div.1993), we expanded on that theme with these observations:
We recognize that drastic personnel action may in certain circumstances result in adverse mental and even physical consequences. Unfortunately, it is not uncommon for businesses, even large enterprises, to cut back their workforce or to close their doors and displace an entire workforce. The resulting disability to a severed employee in some cases may be immediate, while in other instances it may occur slowly and progressively depending on personal factors such as inability of the layed-off worker to obtain work. It would be unusual for there not to be some emotional response by an employee to drastic personnel action.
Nonetheless, in the absence of evidence of a clear legislative intent to require payment of workers' compensation benefits for disability caused by varying personalized responses of employees to bona fide personnel decisions that alter an employee's work status, we are constrained to conclude that the burden of providing compensation to such employees may not be imposed upon an employer. Even where instances of such harm may be predictable, the stress or trauma caused by such personnel decisions is an ordinary part of life and is not so peculiar to the specific employment as to be deemed to arise out of the employment.

[Id. at 401, 631 A.2d 978.]
In reaching our conclusion, we have kept in mind that the Workers' Compensation Act is "humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense." Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 586, 147 A.2d 783 (1959). Although we have demonstrated why we conclude the extant legal formulas will not permit compensation in this case, we have also considered the somewhat broader approach suggested by Tocci:
The continued sweeping generality of the statutory language and its judicial definition suggest the conscientious endeavor to maintain a liberally just line between those accidental injuries which may be said to have had some work connection and those which may be said to have been unrelated to the employment. In drawing that line the courts have not rested on any legalistic formula but have sought to apply the comprehensive legislative compensation plan fairly and justly to the particular facts presented.
*34 [Id. at 587, 147 A.2d 783 (citations omitted).]
In our view, a fair and just resolution of this case does not warrant compensation for this employee's willful, unreasonable, and idiosyncratic reaction to a commonplace personnel action. Therefore, the judgment entered by the Division of Workers' Compensation is
Reversed.